NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—June, 1887.

## MATTER OF HOWARD.

*In the matter of the estate of* REBECCA P. HOWARD,
*deceased.*

Rights of inheritance, and of testamentary and intestate succession, being
creatures of the municipal law, are entirely subject to its control and
may be regulated, restricted and, *it seems,* even abrogated by statute.

L. 1885, ch. 483, entitled "An act to tax gifts, legacies and collateral inher-
itances in certain cases," is to be properly regarded as imposing a tax
upon the devolution of and succession to a decedent's property, and
not upon the property itself.

The will of testatrix directed the executors thereof, as soon as convenient
after death, to sell for cash all bonds which she should own at the
time of her death, collect all moneys due, and divide and pay, out of
the proceeds of sale and other funds, certain pecuniary legacies. No
allusion was made to the possession of United States bonds, although
a portion of the estate consisted of such securities. The executors,
upon their accounting, having asked credit for a payment of moneys
made to the comptroller under L. 1885, ch. 483, certain legatees objec-
ted and asked to be relieved from the burden imposed upon them so
far as concerned the value of the bonds in question, upon the ground
that the same were exempt from taxation.—

*Held,* that the tax imposed and paid was not upon property but upon the
*passing* thereof ; that the fact that a portion thereof consisted of gov-
ernment securities was immaterial ; and that the objection must be
overruled.

HEARING of objections to account of executors of
decedent's will, filed in proceedings for judicial settle-
ment.

EDWARD C. DELAVAN, JR., *for executors.*

GEO. C. GENET, *for objectors.*

JONATHAN MARSHALL, *special guardian.*

THE SURROGATE.—This testatrix at the time of her death was a resident of the county and State of New York. Her executors having heretofore filed in this court an account of their proceedings now ask for its judicial settlement and determination. Among the items for which they claim credit is one of $5,880.46 for so much moneys paid to the Comptroller of the city of New York as taxes under the so-called Collateral Inheritance act of June 10th, 1885 (L. 1885, ch. 483).

It is provided by § 6 of that act that " an executor having in charge or trust any legacy or property for distribution subject to the said tax, shall deduct the tax therefrom, or, if the legacy or property be in money, shall collect the tax thereon upon the appraised value thereof from the legatee or person entitled to such property."

It is claimed, in behalf of certain legatees upon whom must fall in part the burden of taxation under this statute, that they are entitled to be relieved from that burden so far as concerns the sum paid by the respondents as a tax upon $60,000, the value of certain United States bonds which came to the respondents' hands as a part of their decedent's estate.

One of the provisions of Mrs. Howard's will is in words following : " I direct that, as soon as may be convenient after my death, my executors shall sell for cash all bonds I shall own at the time of my death, collect all moneys . . . that I may then have on hand or that may be due and owing to me in any way, and, without unnecessary delay, divide and pay out, etc., etc." Then follows a specification of cer-

tain persons, and of certain legacies bequeathed to those persons respectively. Included in this list of beneficiaries are the contestants in this proceeding.

The first section of the Collateral Inheritance act is in these words : " All property which shall pass by will or by the intestate laws of this State, from any person who may die seized or possessed of the same while being a resident of the State, or which property shall be within this State . . : to any person or persons " [save certain excepted persons] . . . " in trust or otherwise . . . shall be and is subject to a tax of five dollars on every hundred dollars of the clear market value of such property . . . to be paid . . . in the city and county of New York to the Comptroller thereof for the use of the State."

It is claimed by these contestants that the tax, for which provision is thus made, is expressly imposed upon *property*, and that, so far as the testator's estate consisted at her death of United States bonds, it is absolutely exempt from taxation.

It appears, upon examination of her will, that ,it makes no allusion to her possession of United States bonds, and contains no provision bequeathing any such bonds to these contestants, or to any of them, or to any other person whosoever. On the contrary, her executors are directed to " sell for cash *all* bonds " that may constitute at her death a part of her estate, and to pay out of the proceeds of such sale, and out of the funds derived from other specified sources, certain pecuniary legacies, including the legacies to these contestants.

There may be some substance in the claim of the

accounting parties that, even if specific bequests of Government securities might be deemed exempt from taxation under this act, so that a legatee thereof could compel their delivery without abatement, these objectors, to whom are bequeathed mere general legacies of money, are nevertheless chargeable with the tax. In support of this contention, I am referred to certain authorities holding that the doctrine of equitable conversion has such an application to succession tax laws, that where a testator has positively directed the sale of real property, for example, and the employment of the proceeds for the use of a *cestui que trust*, the interest of such *cestui que trust* is liable to the succession tax even though he may have taken the property *in specie*, without previous conversion by his trustees (Attorney General v. Halford, 1 *Price*, 426 ; Williams v. Advocate General, 10 *Cl. & Fin.*, 1 ; Miller v. Commonwealth, 111 *Pa.*, 321).

It was held by the Supreme court of Pennsylvania, in the case last cited, that although the lands of a decedent situated without that State were not subject to the collateral inheritance tax imposed by its laws, his positive testamentary direction to sell such land and to pay the proceeds to a legatee had the effect of fastening upon those proceeds the quality of personal assets within the State, and of making them, as such, liable to the tax.

I am disposed to think, however, that, if the State of New York is entitled to the tax here claimed to have been erroneously paid to the Comptroller, its right thereto rests upon a broader foundation than has been laid for it by any particular testamentary direc-

tions to the executors as to the manner of dealing with the estate prior to its distribution.   And for this reason among others:   The Statute of 1885 cannot be construed as discriminating between the property of intestate decedents and the property of testators, as regards the liability of the one and the other to the payment of the tax by that statute imposed.   It does not contemplate, for example, that the property of one whose entire estate may consist of Government bonds, shall be liable to tax in the event of his dying intestate, though he might have relieved his estate from that burden by bestowing such bonds in specific bequests to the objects of his bounty, and would nevertheless have been powerless to afford it such relief by the disposition of his estate in general pecuniary legacies.

It seems to me that the action of the executors must be sustained, if it is sustained at all, upon the ground that, although in form of words the tax imposed by the statute in question is a property tax, it is not essentially a property tax at all, but is rather a tax upon the devolution or succession of property passing from a person deceased to his heirs, next of kin, devisees and legatees.

The theory upon which these contestants rely was recently pressed upon the consideration of our Court of Appeals in the Matter of McPherson (104 *N. Y.*, 306), but no intimation as to its soundness or unsoundness is given in the decision of that cause.

The precise matter there under consideration was the question whether the Collateral Inheritance act was or was not obnoxious to the Constitution of this

State, and it was said by Judge EARL, who pronounced the opinion of the court, that, for the solution of that question, it was entirely immaterial whether the act was to be regarded as imposing a tax upon *property* or as imposing it upon the *passing* of property.

The question thus left undetermined in Matter of McPherson is one of paramount importance in the case at bar. If the tax in dispute is in a strict sense a tax upon property, it may be claimed, with much force, that a decedent's estate, so far as it consists of United States bonds, is wholly exempt from taxation. If, on the other hand, the tax is imposed upon the " passing " of such decedent's property, the question whether the property consists in whole or in part of United States bonds is wholly immaterial.

The doctrine asserted by Sir William Blackstone in Chapter 1, Book 2 of his Commentaries has been repeatedly asserted by the courts of this country. " The universal law of almost every nation," he says, " has given a dying person a power of continuing his property by disposing of his possessions by will; or, in case he neglects to dispose of it, or is not permitted to make any disposition of it at all, the municipal law of the country steps in and declares who shall be the successor, representative or heir of the deceased, . . . . and in case no testament be permitted by the law, or none be made, and no heir can be found so qualified as the law requires, . . . . the doctrine of escheats is adopted in almost every country, whereby the sovereign of the State, and those who claim under his authority, are the ultimate heirs, and succeed to those inheritances to which no other title can be founded.

. . . . Wills, therefore, and testaments, rights of inheritance and successions are all of them creatures of the civil or municipal law, and accordingly are in all respects regulated by them."

The sovereign power of this State may, if it chooses, abrogate the existing statutes of wills and of distribution, and, as regards personal property that may be possessed at his death by any person residing within its limits, may direct that the same shall become exclusively the property of the State. If it can thus exert absolute authority in the premises it may of course wield such limited authority as it may see fit to exercise. It may appropriate to itself a prescribed portion of the decedent's possessions and permit his kindred or the objects of his testamentary bounty to enjoy the rest.

The legislature of New York had power, therefore, to declare, at the time of the enactment of the law here in question, that henceforth the personal estate of a resident decedent, in excess of the sum necessary for discharging his debts, should not all of it pass, as it would theretofore have passed, to his legatees or his next of kin; that only ninety-five *per centum* thereof should so pass, and that the remaining five *per centum* should escheat to the State. This authority was in no manner dependent upon the character of the decedent's property. Even if it should consist exclusively of United States bonds, the State had power to direct that five *per centum* of the whole amount of such bonds should flow into its treasury.

It seems to me, therefore, that the only practical question here presented, is the question whether the

legislature of 1885 has, *in fact*, exercised the authority above referred to, or whether it has, either intentionally and of set purpose, or unintentionally by careless phraseology, failed to impose a tax upon the succession or devolution of a decedent's property and imposed a tax upon the property itself, with the result of exempting from taxation such portions of his estate as consist of securities of the general Government.

The title of the act here in question is, " An act to tax gifts, legacies and collateral inheritances in certain cases." Its substantial provisions and much of its phraseology are borrowed from a similar statute of Pennsylvania. In interpreting its language it is instructive, therefore, to examine the Pennsylvania act and the construction given to its provisions by the courts of that State.

The law of Pennsylvania declares that " All *estates*, real, personal and mixed of every kind whatsoever, *passing* from any person who may die seized or possessed of such estate, being within this commonwealth, either by will or under the intestate laws thereof . . . other than to or for the use of, etc., etc., . . . shall be and they are hereby made subject to a tax or duty of," etc., etc.

In Strode v. The Commonwealth (52 *Penn. St.*, 181), the trial court held that the fact that a decedent's estate had consisted in part of United States bonds did not *pro tanto* relieve it from taxation under the statute just quoted. The appellant claimed that this decision was at variance with the Act of Congress of February 15th, 1862, and with the principle established in McCulloch v. Maryland (4 *Wheat.*, 316), and

affirmed in numerous later cases, that the several States "had no power by taxation or otherwise to retard, impede, burthen or in any way control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government."

In holding that this doctrine had no restrictive operation upon the power of the State to impose a collateral inheritance tax, the court of first resort declared that that tax was not a tax upon property at all, but was in substance and effect a bonus exacted from a decedent's legatees, devisees and distributees, as the condition on which they were permitted to succeed to his estate. The right of the owner of property to dispose of it by will and of his kindred to take it in case he should die intestate, was declared to depend solely upon municipal regulation.

The trial court, whose decision was reviewed in Clymer v. The Commonwealth (52 *Penn.*, 185), said: " This law (meaning the Collateral Inheritance Law), contemplates the imposition of no tax such as Congress intended to prohibit" (referring to the United States statute of February 25th, 1862). "It is called a tax or duty, but it has little if any analogy to. a tax in the usual acceptation of the term. . . . It is not to be viewed as a tax assessed upon the estate of a decedent, or of any one, but as a restriction upon the right of acquisition by those who, under the law regulating the transmission of property, are entitled to take as beneficiaries. The State is made one of the beneficiaries. It lays its hands upon estates under such circumstances and claims a share ; whether its

share is exacted as a tax, or duty, or whatsoever else, and whether the machinery employed in levying an ordinary tax is adopted or not is of no consequence." The decisions in the two cases above cited were affirmed on appeal.

In pronouncing the opinion of the court of last resort in Matter of Strode, WOODWARD, C. J., said: "The mistake of the counsel for the plaintiff in error consists, we conceive, in treating this as a tax of Government bonds when it is really a tax upon the estate of a decedent dying without lineal heirs. And it does not help the argument that the bulk of the estate is made up of these bonds; for that estate passed into the hands of the executor for administration, and is taxed in his hands *as an estate*. The law takes every decedent's estate into custody, administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to collateral kindred is subject, is this five *per cent.* duty to the Commonwealth. And it is not until this work of administration is performed that the right of succession attaches. The distributees may indeed consent to accept certain goods and chattels without conversion, but such arrangement in no case affects the theory of the law that the estate is first to be administered and then enjoyed." This doctrine was recently reasserted in Orcutt's Appeal (97 *Penn. St.*, 179).

Collateral Inheritance laws similar to the present law of New York have long been in force in Virginia

and Maryland. Section 6 of chapter 39 of the Virginia
Code of 1849 provided that " where any *estate* of any
decedent within this Commonwealth" should "*pass*
under his will or the laws regulating descents or dis-
tributions, to any other person or for any other use
than to or for the use of," etc., . . . the estate so
passing should be subjected to a certain specified tax.

In Eyre v. Jacob (14 *Gratt.*, 422) may be found a
very elaborate decision by the Court of Appeals of
Virginia as to the significance and effect of these stat-
utes. It was claimed by counsel who were attacking
their constitutionality, that their provisions were vio-
lative of the Constitution of the Commonwealth which
declared that taxation should be equal and uniform.
The court said, in pronouncing its opinion : " If
this tax were properly to be considered as a tax on
property, there would be great force in the argument
of counsel ; . . . but such I think is not its true char-
acter. . . . The intention of the legislature was to
tax the *transmission* of property by devise or descent
to collateral kindred ; to require that a party thus
taking the benefit of a certain right, secured to him
under the law, should pay a certain premium for its
enjoyment ; and as it was thought just and reasona-
ble that the amount of the premium should have a
certain proportion to the value of the subject enjoyed,
it is fixed at a certain *per centum* upon the value of
the estate transmitted."

The Collateral Inheritance tax was abolished in Vir-
ginia in 1855. It was subsequently reimposed in
1863, in terms substantially such as had been adopted
in the earlier statute. The Virginia Court of Appeals

reiterated in Miller v. The Commonwealth (27 *Gratt.*, 110) that the tax was not to be regarded as a tax upon " property," and declared that certain specific charitable institutions which had been relieved by statute from general taxation, were nevertheless subject to the liabilities of the Collateral Inheritance act, in the absence of special exemption in the act itself.

The Maryland Code of Public General Laws, art. 81, § 124, declares that " All *estates*, real, personal and mixed, money, public and private securities for money of every kind, *passing* from any person who may die seized and possessed thereof . . . . to any person or persons . . . . other than to or for the use of, etc., shall be subject" to a certain specified tax.

The constitutionality of this act, as a law imposing a tax upon the devolution or succession of property, was sustained by the Maryland Court of Appeals in Tyson v. State (28 *Md.*, 577).

Now so far as concerns the question here to be determined, the phraseology of ch. 483 differs from the phraseology of the kindred statutes of Pennsylvania, Virginia and Maryland, in this particular only : that in the one case the tax is imposed upon *the passing of property*, while in the other cases it is imposed upon *the passing of estates*. I am clear, however, that this is a distinction without a difference. The word " property " and the word " estate " are convertible terms, both of which, however, have double significations. Each of them means, under some circumstances, the *right* of ownership ; the *right* of possessing, enjoying and disposing of a thing ; the *interest* that one has therein. Each of them means, under

other circumstances, the tangible *subject* of ownership and possession ; the very *res* itself.

The doctrine of the Pennsylvania, Virginia and Maryland cases above cited seems, therefore, to be applicable to the case at bar. I hold that this doctrine is sound and that the objections to the account of these executors must be overruled.