## Drayton's Appeal.

1. A testator in Pennsylvania gave the residue of his estate to collaterals, and authorized his executors in their "discretion to sell on such terms as to them shall seem expedient, all (his) real estate." His personalty was sufficient to pay his debts and pecuniary legacies. He owned real estate in Minnesota, which his executors sold, deposited the proceeds in bank in Pennsylvania in their general account as executors with money arising from personalty, drew on the whole fund for the purposes of the estate and charged the proceeds in their general account as executors. *Held*, that these proceeds were not liable to collateral inheritance tax.

2. The liability of land devised, &c., for collateral inheritance tax, is to be determined by its character at the death of the decedent.

3. In this case there was a mere authority to sell, not a positive direction, and the land would have descended to the heir at law of a devisee dying.

4. The interest, right of possession and perception of rents and profits were in the devisees between the death of the testator and the sale.

5. The land and the proceeds when sold were under the jurisdiction of Minnesota.

February 19th 1869. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia*, in the estate of Percival Drayton, deceased: No. 171, to January Term 1869.

The decedent died in August 1865, leaving a will dated March 11th 1865, by which, after directing the payment of several legacies, he provided: "All of the residue and remainder of my estate, both real and personal, I do devise and bequeath absolutely and in fee to my brother, W. Heyward Drayton, my nephew, Percival L. Drayton and my niece, Maud L. Drayton, children of my deceased brother, W. S. Drayton, in equal shares, share and share alike; but should my nephew or niece above named die without issue, before the age of twenty-one years, then his or her portion is to go to the survivor; and should they both die having no issue before the age of twenty-one years, then all that they would have inherited under this will I give to my brother, W. Heyward Drayton, absolutely in fee.

\*          \*          \*          \*          \*          \*

"I hereby · authorize and empower my executors, hereinafter named, or such of them as may qualify and act under this will, and the survivor of them, in their or his discretion, to sell and convey in fee and to transfer absolutely, on such terms as to them or him shall deem expedient, all or any part of my real or personal estate, and to execute all assurances and instruments therefor, and generally to vary and transfer all investments."

Letters testamentary were granted to W. Heyward Drayton, the executor named in the will. His account was referred by the Orphans' Court to Furman Sheppard, Esq., as auditor, for examination and distribution.

[Drayton's Appeal.]

His report, so far as relates to the question considered in the Supreme Court, is as follows :—

"At the time of his death, the decedent owned certain real estate, situate in the city of St. Paul, and state of Minnesota. The will authorized and empowered the executors to sell and convey, as to them should seem expedient, all or any part of the real or personal estate; and, under the power thus granted, they sold real estate in St. Paul, and on January 23d 1867, received, as proceeds thereof, the sum of $13,374.73, with which the accountant, on that day, charged himself in his account as filed. These moneys were the same day deposited by the accountant to the credit of his general account as executor, he having, immediately prior to said deposit, a balance of $2186.91 standing to his credit in said account. The last two of the above-mentioned payments, on account of the legacy of Thomas F. Drayton, viz., that of February 20th 1867, for $6000, and that of May 21st 1867, for $1000, were made from the common fund, consisting, as above mentioned, of the proceeds of the real estate and of the prior credit balance. It was suggested that inasmuch as the two payments above mentioned, to Thomas F. Drayton, consisted in whole and in part of the proceeds of the real estate in St. Paul, they were not chargeable with the collateral inheritance tax. It is true, that land in another state is not liable to collateral inheritance tax in Pennsylvania; but the auditor, though not free from doubt on the subject, inclines to the opinion that the facts, as stated, do not present the case of a tax on realty. Under the power of sale contained in the will, the land was converted into cash. The proceeds were received by the accountant as cash, and as such included in the account. They became blended with the general cash fund then in his hands, and the common fund thus derived from various sources of income was drawn upon for the general disbursements of the estate, including among others the two payments on account of the legacy to Thomas F. Drayton. It is difficult to determine whether the whole amount of those two payments, or only the excess above the balance in hand on January 23d 1867, was in point of fact made from the proceeds of the realty. They were cash payments made in this state from the general cash fund in the hands of the accountant as executor, and the auditor is not satisfied that they are exempt from the collateral inheritance tax, and he accordingly declines to report in favor of such exemption."

To this report the following exception, amongst others, was filed :—

"2. To so much of the auditor's report as charges collateral inheritance tax upon any portion of the fund in the account of the executor and trustee, which is the proceeds of real estate in Minnesota sold by the trustee and brought into his account."

The Orphans' Court dismissed the exception and confirmed the report.

W. H. Drayton, Percival L. Drayton and Maud L. Drayton appealed to the Supreme Court, and assigned the decree of confirmation for error.

*W. H. Drayton* (with whom was *G. M. Wharton*), for appellants, cited Acts of April 7th 1826, § 1, Pamph. L. 227, March 11th 1850, § 3, Pamph. L. 170, Purd. 148, pl. 2; Coleman *v.* Commonwealth, 2 P. F. Smith 468; Hood's Estate, 9 Harris 106; Short's Estate, 4 Id. 63; Holman's Appeal, 12 Id. 174.

*J. S. Powell,* for W. A. Leech, Esq., register, appellee, cited Acts of 1826 and 1850; Commonwealth *v.* Coleman; Hood's Estate, *supra.*

The opinion of the court was delivered, May 11th 1869, by

SHARSWOOD, J.—By the Act of Assembly entitled "An Act relating to Collateral Inheritances," passed April 7th 1826, Pamph. L. 227, "all estates, real, personal and mixed, of every kind whatsoever, *passing* from any person who may die seised or possessed of such estate, being within this Commonwealth, either by will or under the intestate laws thereof," shall be subject to a certain tax, generally called the Collateral Inheritance Tax: and by the 3d section of the Act of March 11th 1850, entitled "An Act relating to Collateral Inheritance Taxes," Pamph. L. 170, it is provided that the words "being within this Commonwealth," in the 1st section of the Act of April 7th 1826, "shall be so construed as to relate to all persons, who have been at the time of their decease or now may be, domiciled within this Commonwealth as well as to estates; and this is declared to be the true intent and meaning of said act."

In The Commonwealth *v.* Coleman's Adm'rs., 2 P. F. Smith 468, it was decided that land in another state is not subject to this tax. It is evident that to determine the nature of the thing descending or devised, and thus ascertain whether it is within the rule thus established, we must consider what it was at the time of its *passing* from the person who died seised or possessed thereof, that is, in the case either of descent or devise at the time of his death. This is according to the express words of the Act of 1826, which in this respect, is in no way modified by the Act of 1850. Was then the subject from which the tax in this case is claimed, land in another state, at the time it passed from the testator Captain Drayton to his residuary devisees? It was then unquestionably land, though subject to a power of sale. Had one of the residuary devisees died, it would have descended to his heirs at law, and not vested in his executors. There was a

mere authority to sell, not a positive direction. Had there been, it might have been contended that the land was converted into money, and passed as such; and that in that case even a subsequent election by those entitled to the proceeds to hold the subject as land would not have availed to exempt it. It follows logically from the premises that if it was land or real estate at the time it passed from the testator, its subsequent conversion under the power of sale did not change its *status*, so far as this question is concerned. We are tied down to this result by the very words of the act; nor is it repugnant to the reason and spirit of it. The title to the land in Minnesota passed directly under the will to the residuary devisees. It vested in them in fee. It cannot be pretended that if in the exercise of their proprietary right they had sold and the executors had released their power, that the proceeds in their hands, though brought into Pennsylvania, could be taxed under the law. Suppose the power of sale had been vested in a third person, not the executor. His receipt of the proceeds in this state would have been merely for the use of the residuary devisees: it would have been their money. Certainly the same result would have followed had the power been given to the executors *nominatim*. It can make no difference that the executors as such are the donees of the power. It is after all a mere *designatio personarum*. The fund produced did not necessarily enter into the administration account. That the conversion did not relate back to the testator's death is shown by the well-settled rule that the interest, right of possession and perception of rents and profits was in the devisees in the intermediate time: Lessee of Lindenberger *v.* Matlack, 4 Wash. C. C. Rep. 278; Boshart *v.* Evans, 5 Whart. 551; Nagle's Appeal, 1 Harris 260. Had the law of Minnesota so provided, it would have been liable to a collateral inheritance tax in that state. The executors could be compelled to prove the will, and take out letters testamentary there; and there also to have settled their account of the proceeds of sale. The land, and of course its proceeds when sold, were under the jurisdiction of that state. *Immobilia statutis loci regantur ubi sita.* Had the proceeds been distributed there as they might have been, it could not be thought that the law of Minnesota would have admitted the power of Pennsylvania to levy a tax upon it. If the distribution had been made there, to what fund could the executors look here for the tax? We must consider the case as if this Minnesota land had been all the estate the testator had; and as if it had been sold under the power and the proceeds distributed abroad. Surely, the bringing them into this state and depositing them in the bank account of the executor along with other funds of the estate, can make no difference. The amount is certain, and they needed no ear-mark to distinguish them from the other moneys of the testator. Hood's Estate,

[Drayton's Appeal.]

9 Harris 106, shows clearly that if the property is not liable to the tax at the death of the testator wherever it is, the bringing it into this state does not make it so. The personal estate left by Captain Drayton was ample to pay all the pecuniary legacies contained in his will. It is unnecessary to decide whether the case would have been altered if the real estate had been required for this purpose. The fact is, that the collateral inheritance tax has been paid on the entire personalty: on all the pecuniary legacies and on so much of the residuary legacy as consisted of personalty. We think that the part of the residuum consisting of the proceeds of the real estate in Minnesota was not subject to the tax.

> Decree reversed—second exception to the auditor's report sustained, and record remitted that the account as stated by the auditor may be corrected accordingly.

THOMPSON, C. J., dissented, and filed a dissenting opinion.