# Miller et al. Executors of Richey *versus* The Commonwealth of Pennsylvania.

1. A testamentary direction to executors to sell land, works its conversion into personalty.

2. The effect of such a direction is not avoided by a discretion, vested by a subsequent clause of the will in the executors to convey land to a legatee in satisfaction of a pecuniary legacy, if land is conveyed for this purpose by the executors the legatee will take by purchase.

3. Where a testator domiciled in this Commonwealth devises land situated without the Commonwealth, to be sold to pay pecuniary legacies, the legacy will pass to the legatee as money and subject to the law of the testator's domicile and hence will be subject to the collateral inheritance tax.

1 AMERMAN—21

November 10th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to Common Pleas, No. 1, of *Allegheny county:* Of October and November Term, 1885, No. 225.

Debt by the Commonwealth against P. Harvey Miller and George D. McGrew, executors of the last will of Daniel Richey, deceased, to recover collateral inheritance tax alleged to be due on account of the provisions of the said will.

In the court below the following case stated was filed:

It is agreed by and between the Commonwealth of Pennsylvania, by Philip Hoerr, Register of Wills, etc., of Allegheny County, Pa., plaintiff, and George D. McGrew and P. H. Miller, executors of David Richey, deceased, late of said county, defendant, that an amicable action of debt be entered in said court by plaintiff against defendants, and the following case is stated for the opinion of the court:

David Richey, a citizen of Allegheny County, Pennsylvania, died July    , 1879, having first made his last will and testament, dated April 8th, 1879, and duly registered in said county, which, in words and figures, is as follows:

"I, David Richey, of the City of Allegheny, in the County of Allegheny and State of Pennsylvania, do make and publish the following as and for my last will and testament, hereby entirely revoking all other wills by me at any time heretofore made:

"I. To my sister, Rebecca Culbertson, I devise for and during her natural life, the house in which she now resides, with the lot therewith connected, the same being situated in the Third ward, of the City of Allegheny, in the County of Allegheny and State of Pennsylvania, the said house being numbered two hundred and ninety-three (293) Ohio street, in said City of Allegheny.

"I also bequeath to her for her natural life all the household furniture, goods and personal property in or used in said house.

"From and after her death I devise and bequeath said real and personal estate to my executors hereinafter named, to be disposed of as hereinafter stated.

"II. To Kate Smurr, wife of Reason Smurr, of Fayette County, in the State of Pennsylvania, I do devise for and during her natural life, the farm on which she now resides, the same being situate in          township, in said County of Fayette, contains about one hundred acres, and is the same I purchased of Edward Eaglen. From and after her death I do devise said farm to such of her children as shall be then living. Life estate of said Kate to be for her sole and separate use.

"III. I do give, devise and bequeath all the rest and resi-

[Miller v. Commonwealth.]

due of my property, real, personal and mixed, to my executors hereinafter named, in trust, nevertheless, that they shall dispose of and sell all the same, and, after paying all my legal debts and funeral expenses therefrom, shall divide the residue thereof as follows:

"IV. To my sister, Rebecca Culbertson, the sum of twenty thousand dollars ($20,000). This sum shall have priority over all others, and shall bear interest at the rate of six per centum per annum from my death until it is paid.

"V. To P. H. Miller of Allegheny City, aforesaid, the sum of twenty-five thousand dollars ($25,000) in trust, nevertheless, for the following uses and purposes: That the said P. H. Miller shall invest and re-invest said sum in such manner and in such securities as to him may seem proper, with power to change the investments; that he will collect and receive the income, interest and profits therefrom, and, less the expenses of his trust, shall pay the same quarterly to my niece, Elizabeth Owens, wife of Samuel T. Owens, for her sole use, for and during her natural life, but neither the principal or income or interest from this money shall in any manner, shape or form be liable for any debts she or her husband may create, nor shall she have the power in any way to anticipate any portion of her income, or in any way assign any portion of the same.

"From and after the death of the said Elizabeth Owens, the said P. H. Miller shall divide the money or securities in his hands to and among her children who shall then be living. . . .

"XVIII. All the surplus, if any, remaining after the payment of all these legacies and the expenses of selling property, distributing, etc., I do direct shall be equally divided among the following: My sister, Rebecca Culbertson, my nephews S. H. Richey and D. S. Richey, and the said Kate Smurr, P. H. Miller, in trust, as aforesaid, for Elizabeth Owens, Vasty J. Hammaker, Jane Dorland, David Dorland, John Dorland, Isaac Dorland, Harry Dorland, Norris Haines, Maria Shelling, Elizabeth Young, Newton B. Richey, Thomas Richey, Catharine Tryan, Susan Young, Louisa Richey, Elizabeth Richey, Mary Richey and Cordelia Smith, Hunter Richey and the said three children of John Richey.

"To my said executors and trustees I do give full and ample power at their discretion to sell, barter and dispose of at public or private sale, on such terms and in such manner as they may deem best, all my property, real and personal, hereinbefore devised and bequeathed to them, and to make all proper bills of sale and conveyances thereof. To any one or more of my legatees they may give or convey, in satisfaction of his or her legacy, such portion of my real or personal estate as in the discretion of my said trustees and the said legatees shall be a fair equivalent therefor.

" I do not desire any of my property to be sacrificed by too speedy sales, and I therefore hereby give to my said trustees and executors three years time from my death to make sales of my property and divide the proceeds thereof among the legatees if in their discretion such time be necessary. Until the trustees do make such division, the said legacies, except Rebecca Culbertson, shall not be payable nor shall they bear interest.

" I give the same power to the surviving trustee and executor which I do hereby give to both, and I hereby nominate and appoint George D. McGrew and P. H. Miller, both of Allegheny City, executors and trustees hereof.

" In witness whereof, I, the said David Richey, at the end of this my will hereinbefore written on six preceding pages, do hereunto set my hand and seal this eighth day of April, A. D. 1879.       (" Signed),     DAVID RICHEY, [L.S.]"

The testator died unmarried and without issue, and all his estate descended to collaterals. The Register of Wills of Allegheny County appointed an appraiser under the provisions of the law relating to collateral inheritance taxes, to make appraisement of the estate of the testator subject to such tax.

Among the property of which the testator died siezed, and which formed a portion of the residuary estate devised to his executors, were certain lands in Virginia and Kentucky, of which the said appraiser made appraisement on April 12th, 1880, and made return as follows, viz:

" That he valued and appraised all the interest of decedent, $\frac{7}{16}$, in all that certain tract of land known as the California property, Rockbreeze County, Virginia, containing 7,000 acres, at the sum of . . $17,500

" Collateral tax thereon, . . . . . . . . . . . .      875

" That he valued and appraised all the interest of decedent, being $\frac{1}{3}$ in the Peters Mountain property in —— county, Virginia, containing 5,000 acres, at the sum of . . . . . . . . . : . . . . .   8,000

" Collateral tax thereon,   . . . . . . . . .      400

" That he valued and appraised all that certain farm tract, containing from three to five hundred acres, situate in Frederick County, Virginia, at the sum of   . . . . . . . . . . . . . .   15,000

" Collateral inheritance tax,   . . . . . . . .      750

" That he valued and appraised all the interest of decedent in tract of land situate in Marion County, Kentucky, at the sum of   . . . . . . . .   4,000

" Collateral tax thereon, . . . . . . . . . . .      200

Owing to claims made upon the estate as to the title to the two

[Miller v. Commonwealth.]

tracts of land in Virginia first described, viz: The tract known as the California property, and the tract known as Peter's mountain property, and advice of counsel that the collateral inheritance tax was not payable on the lands in Virginia and Kentucky, the estate of decedent has not been settled; and though the collateral inheritance taxes have been paid on the balance of the decedent's estate, the payment of it on the lands in Kentucky and Virginia was left for adjudication in the courts.

If the court should be of the opinion that the estate thus appraised is subject to collateral inheritance tax under the laws of Pennsylvania, then judgment to be entered in favor of plaintiff for the sum of $2,225, with such interest as the court may adjudge to be due under the collateral inheritance laws, together with 5 per cent. attorney's commission and costs of suit.

If the court should be of the opinion that the said estate is not subject to such tax, then judgment to be entered in favor of defendant with costs.

Either party to have the right to a writ of error within 30 days after judgment.

Witness the hands of the said parties at Pittsburgh, this 25th day of September, 1885.

R. B. PETTY, *Attorney for Plaintiffs.*

D. T. WATSON, *Attorney for Defendants.*

The court held that appraised estate was subject to the collateral inheritance tax and accordingly entered judgment for the plaintiff for $2,225 with interest at the rate of six per cent., and attorney's commissions and costs.

The defendants took this writ assigning for error the entry of the judgment for plaintiff.

*D. T. Watson* for plaintiffs in error.—The Act of April 8th, 1826, P. L. 227, provides that "All estates . . . . . of every kind soever passing from any person who may die, seized or possessed of such estate *being within the Commonwealth,*" shall be subject to a collateral inheritance tax." And the Act of March 11th, 1850, § 3, P. L. 174, provides the words, "being within the Commonwealth," shall be construed to relate to persons domiciled within the same at the time of their death, as well as to estates. Land situated in another State is therefore not subject to the tax: Commonwealth *v.* Coleman's Adms., 2 P. F. S., 468. It is here claimed that land in Virginia and Kentucky has been converted into personalty by the power of sale given in the will, and hence the testator having at the time of his death

[Miller *v.* Commonwealth.]

been domiciled in Pennsylvania, it is subject to the tax. To this we answer (1) The land is not converted by the will (2) if converted at all it is only a conversion for the purpose of distribution, and as to persons claiming under the will and not a conversion as to the Commonwealth, so as to subject its land to taxation as personalty.

To establish a conversion of land into money the directions to sell must be imperative: Anewalt's Appeal, 42 Pa. St., 414; Howard's Appeal, 2 Penn'y, 347. Paragraph 3 seems to give an absolute direction to sell, but it must be read with paragraph 18 which gives a power to barter, or if the executors see fit to convey the land to a legatee instead of selling it. The direction is therefore not free from all contingencies and independent of all discretion, and hence does not work a conversion. If there is a conversion, what is its extent? Is there a conversion for the purpose of taxation? A conversion does not necessarily result from a direction to sell. It is still a question of intention. Its existence and extent depend on the testator's intention manifested in the will: Chew *v.* Nicklin, 9. Wr., 84; Edwards' Appeal, 47 Pa. St., 144. Here the intent is evidently and solely for convenience in settling and distributing the estate, and as the rule is that the effects of conversion extend only to persons who claim or are entitled under or through the instrument, or directly from or under its author, and not to persons whose claims or rights to the property are purely incidental, the conversion will not enable the State to claim a tax: Pomeroy's Eq., § 166; Orrick *v.* Boehm, 49 Md., 104; Hilton *v.* Hilton, 2 McA., 70; Story's Eq. Juris., § 792; Craig *v.* Leslie, 3 Wheat., 577; Franks *v.* Bollons, L. R., 3 Ch. App., 717; Foster's Appeal, 74 Pa. St., 391; Matson *v.* Swift, 8 Beav., 368.

The mere direction to sell ought not to be held to argue a *situs* to the law for taxation here, for its actual *situs* would still be in Virginia and Kentucky, and it would be subject to a like tax there.

*R. S. Petty, contra.*—A conversion was worked: Craig *v.* Leslie, 3 Wheat., 577; Allison *v.* Wilson, 13 S. & R., 330; Jones *v.* Caldwell, 1 Out., 42; McClure's Appeal, 22 P. F. S., 414. "Barter" is evidently used as synonymous with "sell." The right to convey in satisfaction of legacies does not prevent the conversion, for in case of a conveyance the legatee would take the land as a purchaser: Pyle's Appeal, 6 Out., 317; Laird's Appeal, 4 Norris, 339. A conversion being worked the actual must yield to the legal *situs* of the property, and the property becomes liable to taxation here: Acts April 8th, 1826; March

11th, 1850; February 24th, 1834, § 62; Orcutt's Appeal, 1 Out., 179; Short's Estate, 4 Harris, 63.   The conversion takes place at the death of the testator, hence this property passes as personalty: Pomeroy's Eq., § 1162–4.   The conversion by a direction to sell is absolute: Evans' Appeal, 13 P. F. S., 183; Eby's Appeal, 3 Norris, 241.   The interest of the legatees is only as in converted property: Leiper v. Thomson, 10 P. F. S., 177.   While there is no direct decision upon the question in this State, yet the English authorities are to the effect that where a conversion into personalty takes place the bequest passes subject to the legacy tax: Williamson v. The Advocate General, 10 Cl. & Fin., 1; Attorney General v. Holford, 1 Price, 426.

.  Interest should have been awarded at the rate of 12 per cent: Act April 10th, 1849, § 14.

Mr. Justice GREEN delivered the opinion of the court, January 4th, 1886.

The third clause of the will of David Richey is undoubtedly a positive and peremptory order to his executors to sell all of the real estate in question in this case.   All of the numerous legacies which are given by the following clauses of the will are payable in money out of the proceeds of the property sold under the direction contained in the third clause.   Under all the decisions it cannot be questioned that the third clause of the will operated a conversion of the residuary real estate into personalty efficacious from the moment of the testator's death. But it is argued that the eighteenth clause of the will gives a discretion to the executors to barter the land, or to convey the land itself to the legatees in satisfaction of their legacies, and that this discretion is such a qualification of the order to sell as to deprive it of the effect of conversion.

So far as the use of the word barter is concerned we cannot think it possible that the testator intended it in the sense of exchange, which is its proper meaning.   Such an interpretation would frustrate not only the direction to sell, but the whole purpose of paying legacies in money.   We think the word was carelessly used as an equivalent for sale, or other absolute disposition of the property.   There is an undoubted discretion to convey land for legacies in case the executors and the legatees can agree as to the portions of land which shall be fair equivalents for the legacies.   But, if they so agree, it is manifest that the legatee takes the land as a purchaser, and not as a devisee.   It is merely a substitute for the money, and is taken at a price.   This seems to bring the case within the ruling in Laird's Appeal, 4 Norr., 339, where we held that, although there was an express permission to any of the sons

to take the land at the appraisement, it did not alter the effect of the previous direction to sell, which worked a conversion. This case was followed in Jones *v.* Caldwell, 1 Out., 42, and in Pyle's Appeal, 6 Out., 317; and we are unable to see any material difference between those cases and this.

Had there been a mere discretion to sell, as was the case in Drayton's Appeal, 11 P. F. S., 172, we should have felt bound to hold there was no conversion, and that as the land was situated in another State it would not be subject to collateral inheritance tax, as was decided in Commonwealth *v.* Coleman, 2 P. F. S., 468. But as the order to sell was absolute, and worked a conversion which was not affected by a permission to convey parts of the land in satisfaction of legacies, we have no choice to regard it as other than personalty. As such, it must be regarded as passing by the law of the domicile, and hence subject to the tax.

We see no sufficient reason for imposing the penalty of twelve per cent. interest upon the amount of the tax, as there were claims against part of the estate and consequent delay in the settlement, which, under the Act of May 4th, 1855, § 1, Purd. 216, pl. 9, constitute proper cause for charging only six per cent. We cannot regard as of any efficacy the contention that conversion is to be considered only for the specific purpose of paying legacies, and that for all other purposes the real estate must be treated as such.

It is the legacies themselves that are subject to the tax. As these legacies pass to the legatees only in the form of money, we cannot regard them as other than personalty. If any of the real estate should be conveyed to legatees in satisfaction of their legacies, it would only be as a substituted equivalent for the pecuniary sum of the legacies.

Judgment affirmed.