In re Estate of John Handley, deceased. Appeal of Henry W. Palmer, Lemuel Amerman and John T. Richards, Executors of the Last Will and Testament of John Handley, deceased.

*Collateral inheritance tax—Decedents' estates—Foreign real estate.*

The collateral inheritance tax is chargeable upon the proceeds of the sale of real estate in another state where the testator has peremptorily directed such land to be sold. The status of the property at the instant of death must govern the question of tax, both as to liability and amount. Where the conversion is not imperative, but only permissive and rests in the discretion of the executors or others, it does not become operative until the exercise of the discretion, and in the meantime the land retains its normal character. Where the conversion, though imperative, is not in presenti, but in futuro, it goes into effect only from the happening of the stipulated contingency.

The collateral inheritance tax is not chargeable upon real estate situated in another state, which testator directs by his will shall be sold at the expiration of twenty years after his death.

*Collateral inheritance tax—Decedents' estates.*

Testator was educating a number of young persons at the time of his death, and he provided in his will for the continuance of their education and the payment to each upon graduation of $500. The appraisers fixed an amount for each of the persons being educated, upon which the collateral tax should be paid. The executors appealed from the appraisement. *Held*, (1) that the tax on the expenses of education, apart from the legacy of $500, must be borne by the estate; (2) that in this proceeding the executors had no interest in the question as to whether the tax is now due and payable, or payable in the future.

Argued Feb. 26, 1897.   Appeal, No. 66, Jan. T., 1897, by Henry W. Palmer et al., from decree of O. C. Lackawanna Co., No. 692, Series A., appraising estate for collateral tax.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Re versed.

Appeal from appraisement for collateral inheritance tax.

From the record it appeared that John Handley died on February 15, 1895, leaving a will by which he made various bequests to individuals and charities.  He gave $250,000, to the city of Winchester, Virginia, for the purpose of founding a public library to be called " The Handley Library."   His will continued as follows :

" Item. I direct and order that all of my personal property shall be sold at private sale, except that portion in which a life estate is created by this will, from time- to time by my executors for the best price that can be obtained for the same, hereby giving and granting unto my said executors full power and authority to make, execute and deliver good title for such personal property.

" Item. All my real estate in the city of Scranton, Pennsylvania, except my coal lands in the state of Pennsylvania, West Virginia, and in other states, and my timber and iron ore land situate in the state of Virginia and other states, which I may own at the time of my death, I order and direct my executors to retain at rent for the period of twenty years.

" Item. I order and direct that all incomes and profits growing out of my said real estate, no matter where situate, after paying charges, life estate, repairs, taxes, and insurance shall be laid out and expended in paying in part or in whole the several bequests provided for and mentioned in this my will.

" Item. I order and direct and I hereby empower my executors or their successors to convey and sell my real estate at the end of twenty years, at public or private sale, for the highest price that may be obtained for the same, and to make and execute deed or deeds to the purchaser or purchasers thereof, said deeds to have the same force and effect as if made by order of the orphans' court after sale had according to law.

" Item. I hereby order and direct my executors from time to time to rent at the best rents or royalty all coal and other min-

erals in and upon my lands in the state of Pennsylvania, Virginia, West Virginia and other states, upon the same terms and conditions like minerals are rented by other parties.

"Item. I order and direct that the income arising from the royalty or rents of my said mineral lands shall be applied as follows by my executor, namely, first—To pay the running expenses and public taxes. Second—The balance of said rents or royalty to be paid over every six months to the directors or trustees of St. Patrick's Orphan Asylum, the House of the Good Shepherd and to the city of Winchester, Virginia, in the following proportions, namely, thirty-three and one third per cent of such rents or royalty thereof to each.

"Item. I order and direct the directors or trustees and the officers of the city of Winchester to invest said income so received in the bonds of the states of Pennsylvania or Virginia, or in the bonds of the United States, the interest whereof shall be expended and laid out in paying the expenses, from time to time, of the several institutions provided for in this my will.

"Item. I hereby order and direct my executors and their successors to rent or lease the surface of my farm and mineral lands, and to sell the timber and bark thereon, from time to time, for the best price that can be obtained for said timber and bark. And also to lease the mineral on said lands for the period of twenty years, and thereafter to convey and sell said lands as they are hereinbefore ordered and directed to sell other real estate in this my last will; giving and granting unto my said executors the same power as hereinbefore given to convey and make deeds to the purchasers thereof.

"Item. I direct and order my executors to pay over all money arising from the sale of land situate in Virginia, West Virginia, Pennsylvania and other states, and the timber and bark thereon, and all minerals in and under said land to the directors and trustees aforesaid, and to the city of Winchester, Virginia, aforesaid, in the same proportions as named herein, namely, thirty-three and one third per cent of the net income. Said income to be invested by said several corporations as hereinbefore directed, and to be laid out and expended by them and each of said corporations and the city of Winchester as hereinbefore directed.

"Item. I order and direct my executors or their successors

to collect and apply all of my life insurance or so much thereof as may be required towards the payment of any debts that may be of record against my real estate at the time of my death.

"Item. I order and direct my executors to continue paying the expenses of each boy and girl that I may have at school or college at the time of my death, until each of said persons shall graduate and, when such scholars shall have finished and graduated his or her education, to pay to each boy or girl the sum of five hundred dollars out of the income of my estate.

"Item. I order and direct that if at the end of any one year the income of the money devoted to the support of the library at Winchester, Virginia; St. Patrick's Orphan Asylum or the House of the Good Shepherd shall be more than sufficient to pay the annual expenses, then and in that event I direct that the balance of said income shall be forthwith invested in interest bearing bonds of the United States or the state of Virginia and be added to the capital.

"Item. I order and direct that under no circumstances shall any portion of the capital of either or any of the institutions to which I have in this my will made bequests, sell, dispose, or pledge the same as security to meet the current expenses of said institutions.

"Item. I do hereby declare that all of the several bequests made in this my will are made upon the express condition that none of the moneys, principal, interest, rents or royalties arising from such bequests, shall be applied to any other purpose whatsoever than those specially mentioned and herein appointed.

"Item. All trust money mentioned in this my will shall be invested by my executors or the directors or trustees of the corporations named and the city of Winchester, Virginia, in United States registered bonds unless otherwise named and directed in this my last will.

"Item. I hereby order and direct my executors, unless where otherwise specially ordered, to pay the said persons, corporations and city of Winchester, Virginia, the said several sums of money bequeathed, devised and given by me, in manner following, namely: The total income obtained from my estate, real, personal or mixed, shall be accumulated for the period of two years from the date of my death and, after paying of all just debts, taxes, insurance and other charges for the preceding year, the

balance remaining shall be divided by my executors pro rata among the several persons, corporations and the city of Winchester, Virginia, named in my will, in proportion to the amount bequeathed and devised to each, and so continue to pay, from year to year, on the first days of January in each year, until each and every bequest is paid in full by my executors and their successors.

" Item. I hereby order and direct that no act or deed of my executors appointed under this will or their successors shall be valid or binding upon my estate unless a majority thereof shall consent to the same in writing when the amount involved shall exceed the sum of one hundred dollars.

" Item. Should any one or more of my executors depart this life without first naming his successor in writing, and have the same acknowledged before some officer having authority to take acknowledgments, then and in that event I direct the president judge of this judicial district to appoint such successor or successors as in his sound judgment he may deem proper.

" Item. All the rest and residue of my estate I give, devise and bequeath to the city of Winchester, Virginia, to be accumulated by said city for the period of twenty years, the income arising from said residue estate to be expended and laid out in said city by the erection of school houses for the education of the poor."

The appraiser appraised the lands situated in Virginia and West Virginia for the collateral tax.   He also assessed the cash value of the bequests made to different persons in the nature of scholarships.   The executors appealed from the appraisement, and the court, in an opinion by ARCHBALD, P. J., with some modifications as to amounts, confirmed the appraisement.

*Errors assigned* were (4) the decree fixing the appraisement; (9) in not dismissing the appraisement made by the commonwealth.

*H. W. Palmer*, with him *Lemuel Amerman*, for appellants.— The real estate in Virginia and West Virginia is not subject to collateral inheritance tax: Com. v. Coleman, 52 Pa. 468; Hale's Est., 161 Pa. 181 ; Hoyt v. Commissioners of Taxes, 23 N. Y. 228.

The expenses of boys and girls at school are not subject to tax: Cottage Street Church v. Kendall, 121 Mass. 528; Whitsitt v. Presbyterian Church, 110 Ill. 125; Act of May 6, 1887, P. L. 79.

The collateral inheritance tax is not payable now: Act of May 6, 1887, P. L. 79.

*James H. Torrey* and *Holmes Conrad*, with them *L. A. Watres*, for appellee.—The value of the real estate in Virginia and West Virginia, is subject to collateral inheritance tax: Jones v. Caldwell, 97 Pa. 42; Bright's App., 100 Pa. 602; Laird's App., 85 Pa. 339; Miller v. Com., 111 Pa. 321; Williamson's Est., 153 Pa. 508; Com. v. Coleman, 52 Pa. 468.

The legacies for expenses of boys and girls at school are subject to tax: Tyson's App., 10 Pa. 220; Doty's Est., 27 N. Y. Supp. 653.

The collateral tax is payable now: Act of May 6, 1887, P. L. 79; Dos Passos' Inheritance Tax Law, sec. 58, p. 317–323.

OPINION BY MR. JUSTICE MITCHELL, May 24, 1897:

The first and most important question in this case is the liability of testator's lands in Virginia to assessment for collateral inheritance tax. The effort of a state to impose a tax which must in effect come out of land beyond its boundaries, however indirect or ingenious the mode of exaction, has always been a matter of very questionable jurisdiction. It is universally conceded that the tax cannot be laid directly, and nowhere is this rule stated more positively than in our own cases. See Bittinger's Estate, 129 Pa. 338; Com. v. Coleman's Admr., 52 Pa. 468; Drayton's Appeal, 61 Pa. 172. And the collateral inheritance tax, being a tax on the property passing from the decedent, and not a mere succession duty imposed on the recipient, (Bittinger's Est., supra), is within the defect of power to impose it on land outside of the state.

The border line however is reached when property which is in fact real estate is to be treated as personalty under the doctrine of equitable conversion. On this subject two conflicting views have been entertained by different courts. In Custance v. Bradshaw, 4 Hare, 315, land was held by a partnership, and the interest of one partner who had died was sold to another

partner. It was claimed that this interest was personalty and liable to probate duty. But Vice Chancellor Wigram held that conversion being an equitable fiction would only be carried to the extent necessary to accomplish the equitable result aimed at, and "would not alter the nature of the property for the purpose only of subjecting it to fiscal claims to which at law it was not liable in its existing state." More recent English cases have somewhat modified this decision so far as relates to land held by partners for partnership purposes. See Dos Passos on Inheritance Tax Law, sec. 46b, and 32 Am. Law Reg. N. S. 474, note by Mr. Howard W. Page. But the Court of Appeals of New York adopted the same view as late as 1893. Matter of Swift's Est., 137 N. Y. 77 ; and Matter of Curtis' Est., 142 N. Y. 219, where it was said, "It was never intended by the law to tax a theory having no real substance behind it," and quoting Swift's Est., supra, "the question of taxation is one of fact, and cannot turn on theories or fictions."

In Pennsylvania however the other view was taken in Miller v. Com., 111 Pa. 321, where it was held that, as the testator had peremptorily directed a sale of the land and the distribution of the proceeds, the doctrine of conversion applied, and the actual situs of the land was immaterial, as what passed under the will was not the land but the proceeds, which were personalty, and liable to the tax. The same rule was followed in Williamson's Est., 153 Pa. 508. These cases rest on the basis that the testator intended and directed not a merely nominal or limited conversion but an actual conversion by sale, and the blending of the proceeds with his other personalty for purposes of administration under his will. The action of the court in dating such conversion from the instant of death was but the application of the general rule that what is to be done must be treated in equity as done already. Though this argument is severely technical, and therefore questionable in regard to jurisdiction to tax land in fact situated in another state, yet it has the merit of being unanswerably logical if the premise be once accepted. This court has followed the argument unswervingly to its logical conclusion, even when the result seemed contrary to the express legislative policy of the state. Thus in Coleman's Estate, 159 Pa. 231, where land in Pennsylvania was owned by a testator in New York whose will made an equitable

conversion, the logical corollary of Miller v. Com. was accepted and the land was held to have become personalty and to follow the owner's domicile, and therefore not to be taxable here.

All our cases agree that the status of the property at the instant of death must govern the question of tax, both as to liability and amount: Drayton's App., 61 Pa. 172; Mellon's App., 114 Pa. 564; Williamson's Est., 153 Pa. 508, 521. Where, therefore, the conversion is not imperative, but only permissive and rests in the discretion of the executors or others, it does not become operative until the exercise of the discretion, and in the meantime the land retains its normal character: Drayton's Appeal, supra; Miller v. Com., 111 Pa. 321.

For the same reasons, where the conversion though imperative is not in presenti but in futuro, it goes into effect only from the happening of the stipulated contingency. This brings us to the exact question now before us, and we find it expressly decided in the last case on the subject, Hale's Estate, 161 Pa. 181. The testator left lands in Missouri to his wife for her life, and upon her death, directed his executors to sell them and invest the proceeds in mortgages in St. Louis and pay the income therefrom to collaterals. It was held by the orphans' court of Philadelphia that the proceeds were not taxable and the decision was affirmed. The auditing judge put his conclusion directly on the postponement of the conversion, and though the court in banc referred to the additional circumstance that the proceeds were to be invested in mortgages in St. Louis, yet it is clear that that was not a material point in the ratio decidendi. Mortgages, no matter what the situs of the land pledged, are personal property, and if the conversion had been immediate, no direction as to the investment of the proceeds could have exempted them from the tax. The ground of the decision, which is the logical result of the principles adopted in all the preceding cases, is that the tax is assessable at the instant of death, and where the conversion is not referable to that same instant, as where it is to take place only in the discretion of the executors, or a fortiori where it is postponed by the express direction of the testator, the land in the meantime retains its real character, and being outside the state is not subject to taxation.

In the present case the testator postponed the sale for twenty

years, and there was therefore no conversion when the tax upon the estate accrued. The assignments of error to the tax on the lands in Virginia and West Virginia are therefore sustained.

The other assignments may be more briefly considered. It appears that the testator was educating a number of young persons at the time of his death, and provided in his will for the continuance of their education and the payment to each upon graduation of $500. We have not been convinced that there was any element of contract in these cases, or that the court committed any error in appraising the charges as legacies. The objection that the tax was directed to be paid by the executors out of the general funds of the estate and not by the legatees is, under the special provisions of this will, a merely formal and immaterial error. The present proceeding is not in any sense for distribution but merely for appraisement to ascertain the amount of tax due. Ultimately, so far at least as relates to the five hundred dollar gift at graduation, it will have to be paid by the legatees or deducted by the trustees before distribution. But the expenses of schooling are directed by the will to be paid out of the testator's estate, and the present setting apart of a sum for that purpose has no effect beyond fixing the amount of tax. If more money is required for such expenses the executors will have to supply it, and if the whole sum now fixed upon should not be needed, the surplus will remain part of the general fund, notwithstanding its present designation as a special fund for that purpose. So far therefore as the tax is assessed upon the expenses of education it would seem that it must be borne by the estate, not only primarily but altogether, as the education is directed to be given not at a fixed sum but without restriction as to cost, and the tax on the gift is a necessary and legitimate part of such cost.

The further question argued, whether the tax is now due and payable is not raised by this record. This appeal is by the executors and trustees, and it does not appear that they have any interest in the question. The tax, whether due now or in future, is payable by the devisees and legatees and they are not before us. The executors are nowhere made chargeable with the tax until the distribution, at which time under sect. 5 of the Act of May 6, 1887, P. L. 79, they are required to deduct it from the payment to the legatees, and in case of failure to do so they and their sureties are chargeable with the amount.

But it does not appear that any distribution has been made, or that the time for it has yet arrived. If distribution is unduly delayed the commonwealth under section 15, of the act of 1887 may have a citation to the executors to file an account, or to show cause why the tax should not be paid. By this section the commonwealth, as to the tax, is put upon the same footing as a legatee or creditor with a right to enforce distribution at the proper time. If legacies have been paid and the tax deducted but not paid over the executors are immediately chargeable with it, and if legacies are due and properly payable, but not yet paid, it would seem that the commowealth is entitled to insist on the immediate deduction of the tax by the executors and its payment. But except under such circumstances the executors are not chargeable with the tax and the commonwealth must look to the legatees for its payment.

As already said the legatees are not before us, and it does not appear whether or not they have had any notice of the appraisement. The statute makes no express provision for notice to them, but it gives them a right of appeal, and it would therefore be proper if not requisite that the court should see that notice and a hearing are given. Without such notice and hearing, it is not consistent with the universal principles of law that the parties charged should be affected by the adjudication. But no such question arises in the present case. Nor is any question on the construction of the will now determined. The appraisement is for the ascertainment of the value of the estate with reference to the amount of tax due the state. It has nothing to do with distribution. Where devises or legacies are given, some of which are taxable and some not, the construction of the will may come into question in a proceeding like the present, but only incidentally in order to determine the limits and value of the taxable class. That is the meaning of the words in section 12 of the act of 1887 that on appeal the courts " shall have jurisdiction to determine all questions of valuation and of the liability of the appraised estate for such tax." In this respect the act of 1887 altered the previous law as declared by this court in Stinger v. Com., 26 Pa. 422. But none of these questions will be presented for adjudication until the proper parties are before us.

The decree is reversed and the appraisement directed to be readjusted on the principles herein stated.