# Dalrymple's Estate.

*Domicile—Evidence—Change of domicile—Intention—Collateral tax.*

Where a person died in a town where he had lived, had owned real and personal property, had voted, and had paid a personal tax, he will be deemed to have been domiciled in such town at the time of his death, although he had been frequently away from it, owned property in other states, and had declared that he expected to make his home in a city in another state.

The orphans' court has jurisdiction to determine the domicile of a testator although a probate court in another state had admitted his will to probate and granted letters testatmentary thereon.

*Collateral tax—Appraiser—Appointment of appraiser—Act of May 6, 1887, P. L. 79.*

Under the Act of May 6, 1887, P. L. 79, the appraiser who is authorized to "fix the valuation of estates" subject to collateral inheritance tax, must be appointed by the register of wills of the county in which the decedent had his residence at the time of his death, or of the county in which is the principal part of his estate.

*Collateral tax—Real estate in another state—Conversion—Will.*

An express direction in a will to sell real estate in another state works a clear and immediate conversion into personalty, and makes the property subject to the payment of a collateral inheritance tax in this state.

*Collateral inheritance tax—Legacies—Postponement of payment—Devise.*

Where the time of the payment of legacies only is postponed, and the legatees are to receive not only the principal of the legacy, but also the interest or income accruing thereon, the payment of the collateral inheritance tax is not postponed.

Where the testator directs his executors to give to a nephew the use of a farm for ten years, and at the expiration of ten years to convey the same to him in fee simple, the collateral tax is not postponed.

*Collateral tax—Conversion—Discretionary power of sale.*

Where a testator gives to his executors a merely discretionary power to sell real estate situated in another state, there is no conversion until an actual sale, and until such sale is made the land is not subject to collateral tax.

Argued April 30, 1906.    Appeals, Nos. 223 and 329, Jan. T., 1905, by Oliver Dalrymple et al., and by the Commonwealth of Pennsylvania, from decree of O. C. Warren Co., Dec. T., 1904, No. 27, on appeal from collaterial tax in Estate of W. F. Dalrymple.    Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ.    Affirmed.

Appeal from appraisement for collateral tax.

The court in a very lengthy opinion by LINDSEY, P. J., found that the testator was domiciled at Pittsfield at the time of his decease, citing: Jacobs on Domicil, 120; Carey's Appeal, 75 Pa. 201; Price v. Price, 156 Pa. 617; Kellogg v. City of Oshkosh, 14 Wisconsin, 678; Com. v. Emerson, 1 Pearson, 204; Hans v. State of Louisiana, 24 Fed Repr. 55; Frick's App., 114 Pa. 29.

The court also found that there was a conversion as to the land in North Dakota, citing: Drayton's App., 61 Pa. 172; Miller v. Com., 111 Pa. 321; Williamson's Estate, 153 Pa. 508, and Handley's Estate, 181 Pa. 339.

The court also further found as follows:

In paragraph six of the second section the testator directs his executors and trustees to give to Frank Dalrymple, his nephew, the use of the home farm on which he now resides, in Sugar Grove, Warren County, Pa., consisting of about seventy-five acres, for ten years, and at the expiration of ten years, to convey the same to him in fee simple. This title unquestionably passes to Frank Dalrymple as real estate and is not subject to any life estate or estate for years, and therefore does not come within the provisions of the third section of the act of 1887. The tax is presently payable on this legacy by Frank Dalrymple, the legatee.

In paragraph seven, the testator directs his executors and trustees to hold, manage, operate, develop, improve, etc., all the balance of his estate for a term of ten years and for such longer time as they may deem necessary, not exceeding twenty years. And in paragraph eight he makes the following direction: "At the expiration of ten (10) years after my decease, or at such other time or times after said ten (10) years but prior to the expiration of twenty (20) years from my decease as my said executors and trustees or their successors in the trust shall deem expedient or advisable, and for the best interests of my estate, I direct that all the said balance of my estate, together with all proceeds of the sale thereof and all interest, income and accumulations thereof then remaining in their hands, except the above mentioned specific devises and bequests, be by them paid over, delivered and distributed as follows, to-wit, in equal shares to the then living children or

lineal descendants by right of representation of my six brothers, to-wit, David Dalrymple, Mark Dalrymple, Reuben Dalrymple, Clark Dalrymple, Oliver Dalrymple and Sheldon N. Dalrymple."

We do not think this paragraph falls under the third section of the act of 1887. There is no life estate created, or such estate for years as is contemplated by this section of the act. Therefore Coxe's Estate relied on by appellants does not apply to this case, either as reported in 181 Pa. 369, or in 193 Pa. 100.

The court entered the following decree :

And now, June 12, 1905, it is ordered, adjudged and decreed that the executors and trustees of the estate of W. F. Dalrymple, deceased, George H. Noyes, H. C. Hale and Jay M. Smith, pay to the register of wills of Warren county, Pennsylvania, within thirty days from this date, the collateral inheritance tax at the rate of $5.00 on every $100 on each of the specific bequests named in paragraphs three, four and five of section 2 of the testator's will, amounting in the aggregate to $3,900. And it is further ordered, adjudged and decreed that the said trustees pay to the said register of wills the collateral inheritance tax on the balance of said estate passing to the legatees at the rate of $5.00 upon every $100, as provided in paragraph eight of said will, amounting in the aggregate to $2,872.67, within thirty days from this date. And it is further ordered, adjudged and decreed that Frank Dalrymple pay to said register of wills, $5.00 for every $100 on the appraised value of the farm devised to him, amounting to $60.00 within thirty days from this date ; and it is ordered, adjudged and decreed that the said executors and trustees pay the costs of these proceedings within thirty days from this date.

*Error assigned* amongst others was the decree of the court.

*W. E. Rice*, with him *W. D. Hinckley, J. H. Alexander* and *George H. Noyes*, for Oliver Dalrymple et al, appellants.—The register of wills had no jurisdiction to appoint an appraiser : Harrigan v. Gilchrist, 121 Wis. 127 (99 N. W. Repr. 909).

The domicile of William F. Dalrymple, deceased, was estab-

lished by the adjudication of the county court of Milwaukee county, Wisconsin, in probate, and such adjudication is binding upon all parties and cannot be collaterally attacked: Slinger's Will, 72 Wis. 22 (37 N. W. Repr. 236); Security Trust Co. v. Black River Natl. Bank, 187 U. S. 211 (23 Sup. Ct. Repr. 52); Byers v. McAuley, 149 U. S. 608 (13 Sup. Ct. Repr. 906); Corrigan v. Jones, 14 Colo. 311 (23 Pac. Repr. 913); Record v. Howard, 58 Me. 225; McPherson v. Cunliff, 11 S. & R. 422; Shoenberger's Estate, 139 Pa. 132.

The legal domicile of William F. Dalrymple at the time of his death was not in Pennsylvania, and the learned court below, from the evidence adduced before it, should, as a question of fact, have so found: Carey's App., 75 Pa. 201.

No part of the estate, personal or real, actually and permanently located and found outside of the state of Pennsylvania, is subject to appraisement for the assessment of collateral inheritance tax thereon: Bittinger's Est., 129 Pa. 338; Miller v. Com., 111 Pa. 321; Finnen's Est., 196 Pa. 72; Union Refrigerator Transit Co. v. Kentucky, 36 Sup. Ct. Repr. 36; Orcutt's App., 97 Pa. 179; Drayton's App., 61 Pa. 172.

The tax is not presently payable in any event: (a) because the residuary estate is involved in a trust which is to be administered for not less than ten and not exceeding twenty years before the period of distribution; and (b) the residuary legatees cannot be ascertained until the period of distribution arrives: Orcutt's App., 97 Pa. 179; Lines's Est., 155 Pa. 378; Coxe's Est., 193 Pa. 100; Cooper's Est., 127 Pa. 435; Belcher's Est., 211 Pa. 615; Lick's Est., 12 Pa. Dist. Rep. 573; People v. McCormick, 208 Ill. 437 (70 N. E. Repr. 350); Hoffman's Est., 143 N. Y. 327 (38 N. E. Repr. 311).

*Edward Lindsey*, with him *W. W. Wilbur* and *Earle Mac-Donald*, for the Commonwealth of Pennsylvania.

OPINION BY MR. JUSTICE MESTREZAT, May 14, 1906:

In his able and exhaustive opinion, the learned judge of the orphans' court has considered every question raised on these appeals and has so clearly vindicated his conclusions of fact and law that nothing additional is required to support the decree. The questions raised in the court below in this adjudi-

cation were determined in one opinion, and these two appeals, being from the same decree, may be considered together.

The court was clearly right in holding that Pittsfield, Warren county, was the domicile of William F. Dalrymple at the time of his decease. He began business in that county and was the owner of both real and personal property there at the time of his death. It is the only place, so far as the evidence discloses, in which he ever voted or paid a personal tax. As said by the learned judge: "It is shown that he continued to pay a personal tax in Pittsfield, that he continued to vote at Pittsfield, until within a few years of his death, and that he continued to return there to his home at Judge Acocks' till the very time of his death, and died there." He declared that to be his home and that he made it a point to return there and vote at presidential elections when his business interests would permit. As against this we have the fact that he owned property in other states and his declarations that he expected to make his home in Milwaukee and Bayfield, Wisconsin. But these declarations are inconsistent with his acts in continuing to vote in Warren county, this state, and in continuing regularly to return and spend part of his time there until he died in 1901. His intention as disclosed by these declarations, not being carried into effect by an actual change of habitation, there was no change of domicile: Carey's Appeal, 75 Pa. 201. Nor are the recitals in his will and some of his deeds sufficient to fix his domicile. They are not controlling when contradicted by other facts and circumstances: Jacobs on Domicile, 563.

The authority of the orphans' court to determine the domicile of the testator, notwithstanding the action of the probate court of Milwaukee county, Wisconsin, in admitting his will to probate and granting letters testamentary, is clearly sustained by the numerous authorities cited in the opinion of the court below.

The first section of the Act of May 6, 1887, P. L. 79, provides that all estates, real, personal or mixed, passing to any persons, natural or artificial, other than those named in the section, shall be subject to a collateral inheritance tax. This section imposes a tax absolutely upon all such estates. Subsequent sections of the act provide the manner in which the tax shall be assessed and the amount of the tax ascertained.

The twelfth section makes it "the duty of the Register of Wills of the county in which letters testamentary or of administration are granted to appoint an appraiser, as often as and whenever occasion may require, to fix the valuation of estates which are or shall be subject to collateral inheritance tax." It was not the purpose of this section of the act to determine what estates should be subject to the tax nor to declare that appraisers should not be appointed unless letters had previously been granted by the register of wills. The first section, as we have seen, imposes the tax, and it is not conditional on the prior granting of letters testamentary or of administration on the decedent's estate. All estates of the character designated in the first section are subject to the tax. Hence the manifest purpose of the twelfth section was to designate the officer who should appoint the appraisers and the county in which the appointment should be made. The section imposes the duty of appointing the appraisers upon the register of wills, and designates the county in which the law requires letters on the decedent's estate to be granted, as the county in which the appraisers must be appointed. The sixth section of the Act of March 15, 1832, P. L. 135, 1 Purd. 574, declares that letters "shall be grantable only by the register of the county within which was the family or principal residence of the decedent, at the time of his decease, and if the decedent had no such residence in the Commonwealth, then by the register of the county where the principal part of the goods and estate of such decedent shall be." Hence the appraiser who is authorized "to fix the valuation of estates" subject to collateral inheritance tax must be appointed by the register of the county in which the decedent had his residence at the time of his death, or of the county in which is the principal part of his estate.

There is no merit in the contention that the will did not work a conversion of the testator's real estate in Pennsylvania and North Dakota. The third paragraph of the will provides "Inasmuch as I have certain real and personal property belonging to me situated and being in the states of Pennsylvania and North Dakota, I do hereby expressly direct my said executors and trustees or their successors in the trust to sell the same, except the home farm hereinbefore devised to Frank H. Dalrymple, at such prices and upon such terms as they may

deem best, and to keep, hold, invest, use and apply the money or other proceeds from the sale of the same for the uses and purposes mentioned therein." This, it will be observed, is an express direction to sell the real estate in Pennsylvania and North Dakota and works a clear and immediate conversion into personalty. It is therefore subject to the payment of a collateral inheritance tax : Handley's Estate, 181 Pa. 339.

Neither the devise of the farm to Frank Dalrymple nor the bequests to the lineal descendants of testator's brothers are within section three of the act of 1887, so as to postpone the payment of the collateral inheritance tax. The title to the farm vested in Frank Dalrymple and no estate for life or years intervened so as to subject it to the operation of section three of the act. Nor were the descendants of testator's brothers to come into possession of their legacies after the expiration of a life estate or of a period of years. The time of the payment of the legacies only was postponed, and the legatees will receive not only the principal of the legacies but also the interest or income accruing thereon. No other person, under the provisions of the will, can receive any part of the principal or income of the sums bequeathed. Hence no estate for life or years in these legacies intervened between the death of the testator and the time at which they are required to be paid by the trustees.

The Wisconsin real estate was not subject to the payment of a collateral inheritance tax. Real estate situated without the commonwealth is not, as such, subject to collateral inheritance tax under our act of 1887 : Bittinger's Estate, 129 Pa. 338 ; but the proceeds of such real estate become liable for the tax when there is a conversion of the land by a positive direction in the will that it shall be sold : Miller v. Commonwealth, 111 Pa. 321 ; Williamson's Estate, 153 Pa. 508. The status of the property at the instant of the death of the testator determines its liability for the tax, and where the conversion is not imperative, but only permissive and rests in the discretion of the executor or others, it does not become operative until the exercise of the discretion, and in the meantime the land retains its normal character : Handley's Estate, 181 Pa. 339. The Wisconsin lands, like all the other property of the testator, were placed in the hands of his executors and trustees for the purposes named in the will. As we have seen, the real estate

in Pennsylvania and North Dakota was, by the express terms of the will, to be sold, and hence there was an immediate conversion at the testator's death.   But as to the Wisconsin lands, there was no positive direction to sell which would work an immediate conversion.   The executors and trustees were to hold, manage, improve, invest and reinvest the residue of the testator's estate, which included the Wisconsin real estate, for ten years and for such longer time as they might deem necessary, not exceeding twenty years.   By a subsequent paragraph of the will, the testator directs that, at the discretion of his executors and trustees and within twenty years, " all the said balance of my estate, together with all proceeds of the sale thereof and all interest, income and accumulations thereof then remaining in their hands, except the above mentioned specific devises and bequests, be by them paid over, delivered and distributed as follows, to wit : in equal shares to the then living children or lineal descendants by right of representation of my six brothers."   By this clause of the will, the executors and trustees were required to pay over, deliver and distribute to the beneficiaries the residue of the estate, but they were not required to sell the Wisconsin real estate and pay over the proceeds.   The testator's scheme of distributing his estate did not necessarily require a sale of his Wisconsin lands.   The trustees can convey those lands to the beneficiaries and this will meet the requirements of the will.   The argument that it was necessary to sell the Wisconsin lands to pay debts is not convincing.   It does not appear that, at the date of the will, the testator conceived such necessity to exist, and hence that it was his intention, which is controlling, that his lands in that state should be sold.   In fact, the contrary inference is to be drawn, that the debts which were not satisfied out of the personal estate were to be paid out of the proceeds of the sale of the Pennsylvania and North Dakota real estate, which the testator gave express directions to his executors and trustees to sell. That the real estate in these two states is not now of sufficient value to pay his debts is by no means conclusive that he did not regard it as sufficient for that purpose when he executed his will, and that, therefore, he intended that his Wisconsin lands should not be " delivered " to the beneficiaries as real estate.   Besides, he owned several mining locations in Canada

which he, like most men who invest in such property, may have regarded as of great value and as sufficiently productive to meet all his obligations. The intention of the testator, therefore, that his executors should sell his Wisconsin real estate cannot be regarded as having been made to appear because of the present indebtedness of his estate. It is apparent, we think, that the will did not work an immediate conversion of the Wisconsin real estate so as to subject it to the payment of a collateral inheritance tax in this state.

Both appeals from the decree of the orphans' court are dismissed, and the decree is affirmed.