## Clyde's Estate.

*Collateral inheritance tax—Proceeds of real estate in other jurisdictions sold by accountant and brought into Pennsylvania for distribution.*

The proceeds of real estate in other states sold by the trustee under a testamentary power so worded as not to effect an equitable conversion do not become subject to the Pennsylvania collateral inheritance tax on being brought into the jurisdiction for distribution, unless the sale was necessary to pay debts or legacies or to carry out the testator's scheme of distribution by reason of there being insufficient personalty for those purposes.

Craig's Estate, 27 Dist. R. 49, distinguished.

Adjudication. O. C. Phila. Co., Oct. T., 1906, No. 332.

*R. M. Remick* (of *Saul, Ewing, Remick & Saul*), for accountant.

*Robert W. Finletter*, for Commonwealth.

LAMORELLE, P. J., Sept. 27, 1922.—B. Frank Clyde died Oct. 24, 1905, testate, survived by his wife, Caroline B. Clyde, who elected to take against his

2 D. & C.

Clyde's Estate.

will. These facts, as well as others relevant and essential, are set forth in Judge Penrose's adjudication of the executors' account, confirmed *nisi* Dec. 12, 1906.

The present account is of the trust created by the will as modified by the widow's election.

The reason for the accounting is found in the death of Annie Clyde Milne, one of testator's two sisters, who were entitled to income for life, which occurred Jan. 20, 1922. On the death of either, one-half of the income passed to eleven nephews and nieces. One of them, a niece, Emeline Clyde, died Nov. 16, 1915, intestate, unmarried and without issue, so that this share is divisible among the ten who survive.

Such collateral inheritance tax as has been paid is shown in the previous adjudication and schedule following same. Tax is now due on the ten equitable life estates in the personalty going to the ten nephews and nieces, and this, according to the will, is to be charged against the estate.

The Commonwealth, in addition to claiming tax on so much of the ten equitable estates as is represented by personal property, also insists that tax is presently due and payable on so much of the fund now before the court, which is proceeds of real estate in other jurisdictions that has been sold by the trustee.

This latter contention cannot be upheld. By item eighth of the will testator confers upon the trustee power (5) "To sell all or any real estate to me belonging, in fee simple, or for any less estate, and to make good deed or deeds of conveyance thereof in fee simple, or for any less estate without any obligation on the part of the purchaser or purchasers to see to, or be responsible for, the application of the purchase money."

Acting pursuant to such power and authority, the trustee has sold real estate in Virginia aggregating $191,476.05, and in Delaware approximating some $34,000.

There is no direction to sell, nor was the sale necessary in order to pay legacies or carry out testator's scheme of distribution; hence, neither Miller *v.* Com., 111 Pa. 321, nor Vanuxem's Estate, 212 Pa. 315, are in point. Drayton's Appeal, 61 Pa. 172, is, and is controlling. Drayton, a resident of Philadelphia and domiciled in Pennsylvania, was the owner of real estate situate in Minnesota; his will authorized his executors to sell and convey as it seemed to them expedient all or any part of his realty. The Commonwealth claimed tax on so much of the proceeds of real estate as was brought into this jurisdiction and used in the settlement of the estate. This claim was allowed by the auditor, and exceptions to his report dismissed by the Orphans' Court. On appeal, Mr. Justice Sharswood, speaking for the court, reversed: said that learned judge, at page 175: "We must consider the case as if this Minnesota land had been all the estate the testator had, and as if it had been sold under the power and the proceeds distributed abroad. Surely, the bringing them into the estate and depositing them in the bank account of the executor, along with other funds of the estate, can make no difference. The amount is certain, and they need no ear-mark to distinguish them from the other moneys of the testator. Hood's Estate, 9 Harris, 106, shows clearly that if the property is not liable to the tax at the death of the testator, wherever it is, the bringing it into this State does not make it so. The personal estate left by Captain Drayton was ample to pay all the pecuniary legacies contained in his will. It is unnecessary to decide whether the case would have been altered if the real estate had been required for this purpose. The fact is, that the

collateral inheritance tax has been paid on the entire personalty, on all the pecuniary legacies, and on so much of the residuary legacies as consisted of personalty. We think that the part of the *residuum* consisting of the proceeds of the real estate in Minnesota was not subject to the tax." See, also, Handley's Estate, 181 Pa. 339, and Dalrymple's Estate, 215 Pa. 367, wherein the principle applied in Drayton's Appeal is approved as the test.

We are not unmindful of our own ruling in Craig's Estate, 27 Dist. R. 49; in that case, however, the decision is sound on the facts, though the language of the opinion is possibly too far-reaching. A sale of foreign real estate was decreed by the court wherein the land was located and for the payment of debts in such jurisdiction, and the surplus was remitted to the domiciliary executor in Philadelphia and distributed by the Orphans' Court in payment of legacies, there being insufficient personalty for that purpose.

The balance, principal, $2,175,715.90, less tax as aforesaid, is directed to be retained by the trustee for the purposes of the trust. . . .

And now, to wit, Sept. 27, 1922, the account is confirmed *nisi*.

NOTE.—Exceptions, filed by the Commonwealth of Pennsylvania, were withdrawn.