## CLARKE v. CLARKE.

1. EVIDENCE—WILL.—Testimony as to the *intention* of a testator, *separate* and *apart* from that conveyed by the language used in the will, is not competent in seeking the intention of the testator.

2. WILL—CONVERSION.—When the testator uses such words as convey the idea that the whole estate, both real and personal, shall be commingled and distributed as personal property, and in such connection uses such words as "invest" and "pay over," the will will be construed to authorize the executor to convert the realty into personalty, although no direct authority to sell and convey real estate is given.

3. IBID.—CONSTRUCTION—"DEVISE."—The term "devise" in a will usually passes realty in kind, and where that term is used without words negativing the idea, it will pass the realty as such to the beneficiary; but where there are other words in the will indicating a different intention, this technical word will not be permitted to control.

4. IBID.—IBID.—This will construed to work an equitable conversion of realty into personalty.

Before TOWNSEND, J., Columbia, August 30, 1895. Affirmed.

Action by Henry P. Clarke, as executor of the last will and testament of Julia H. Clarke, and trustee of the estate of Nancy B. Clarke, his infant daughter, under said will, against Nancy B. Clarke, for construction of will of Julia A. Clarke, commenced June 29, 1895.

The Circuit Judge filed the following decree:

This cause was heard by me while holding the Circuit Court for the fifth circuit, presiding at Edgefield, at my chambers, by the written consent of the attorneys of the parties, and W. G. Childs, the guardian *ad litem* of the defendant, an infant (R. S., sections 2247–8–9; Code, section

144, as amended by A. A. December 24th, 1894, 21st, 793), upon the complaint, answer, and evidence appended.

Under my apprehension of the principles announced in Wigram on Wills, page 12; *Prop.* v. *Pl.*; 17 Page Pl., 76; 82 Page Pl., 104; *Roseborough* v. *Hemphill,* 5 Rich. Eq., 105, and *Lawrens* v. *Read,* 14 Rich. Eq., 268, 269, I hold those portions of the testimony objected to by defendant's counsel admissible, to wit: "Mrs. Clarke's intention was to convert what she might receive under the will (of P. T. Barnum) into money and invest it in South Carolina. Her reasons for this were, that in the North and West she would have to have her property, if there, managed by agents, and would receive a less rate of interest than that which ruled in the South. In the South she would save expenses and commissions of agents, and could manage, or supervise the management, personally, besides obtaining higher rates of interest." * * *

"In the event of any of the beneficiaries under her will dying intestate, Mrs. Clarke believed that the property of such beneficiary would be distributable under the South Carolina laws for the distribution of intestate estates."

While this ruling is in harmony with my subsequent findings, still these latter are made independently of and without aid from the testimony objected to, and I would make the same findings even had I held said testimony inadmissible, and excluded it.

I find that the allegations of fact in the complaint are each and every one of them true; they have been proved by the testimony. I further find:

I. That the value of the available personal estate of which the testatrix, Mrs. Clarke, died possessed, was $825.25.

II. That the debts owed by her at the time of her decease amounted to about $30,000.

III. That it would require about $35,000 to raise the sums necessitated by the provisions in her will in favor of S. H. Hurd, her father, Mrs. Laura Sherwood, and Miss Agnes C. Patterson, and

IV. That it was the intention of the testatrix, apparent from the words of her will, that such portion of the rest, residue, and remainder of her estate as might consist of realty should not pass as such into the possession of her husband and children, but should be converted into money, and pass into their possession as money in equal shares, they taking *per capita.*

I will, briefly, state the principles of law which, taken along with the patent facts in the case, control me in making this finding: "Wherever there is an absolute necessity to sell in order to execute the will, or wherever there is such a blending of the real and personal estate by a testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money, an intent to convert will be implied, and conversion is always a question of intent."

Among the many authorities in support of this, suffice it to refer among text books to: Bispham's Principles of Equity, 311, *et seq.,* and among decided cases to Hunt's Appeal, 105 Pa. St., 128, 141, and cases which have followed in its wake, *inter alia; appeal of Paist,* 17 Atlantic Reporter, 6 (Pa.); *in re Marshall's Estate,* 23 Atlantic Reporter, 391, and the early leading cases of *Fletcher* v. *Ashburner,* 1 Brown's Ch. Cases, 590, and the English and American notes thereto; 1 White & Tudor's Leading Cases in Equity, p. 2.

In the case at bar all these principles which separately mark conversion unite. To raise the $65,000 necessary to pay the debts of testatrix, and to make the provisions required by the will of testatrix for her father, S. H. Hurd, Mrs. Sherwood, and Miss Patterson, there is an absolute necessity to sell, to execute the will. That there is such a blending of the real and personal estate by the testatrix in her will as clearly to show that she intended to create a fund out of both real and personal estate, and as to the effect, in the connection used, of the words "rest, residue, and remainder." See cases already cited, and, *inter alia, Jaudon* v. *Ducker,* 27 South Carolina, 295; *Moore* v. *David-*

*son*, 22 South Carolina, 93; *Bryan* v. *Munton*, 1 R. and M., 503, 5 Eng. Ch. Rpts.

That the shares of the daughters were to go into their hands as money, is put beyond question by the use of the words "pay the sum." *U. S.* v. *Van Anken*, 96 U. S., 308; Rapalje and Lawrence Law Dict., 941; *Delafield* v. *Barlow*, 107 N. Y., 535; *Cherry* v. *Greene*, 115, 111, 591; *Going* v. *Emery*, 16 Pick., 112, 26 Am. Dec., 645; *Dodge* v. *Williams*, 46 Wis., 70; *Dodge* v. *Pond*, 23 N. Y., 69; *Belcher* v. *Belcher*, 38 N. J. Eq., 126.

If each of the children was to be paid *a sum in money*, and the husband took the same share, he must take his share in money, on the perfect and complete equality scheme of the will, it would seem. *Morehouse* v. *Scaife*, 2 M. and C., 707, 708; *Given* v. *Holton*, 95 U. S., 591.

"The inquiry," says Adam's Equity, page 139, "is whether the effective trusts do or do not require the conversion to be made." Here the will and facts show that they do.

The laws of the devolution of real estate of intestates being different in the different States, where testatrix's various parcels of real estate lay, it can only be by the blending into one fund as personalty of the real and personalty, that the complete and perfect equality contemplated and ordered by the will can possibly go into effect, as to the realty which the deceased daughter might have received had she lived. If this passes through her as realty, when it does come into possession of her heirs, according to the *lex rei sitæ* of the various States, it would work an utter subversion of the equality scheme between husband and children, the prominent characteristic of the will. To effectuate this main intent, conversion, power of sale or any other power necessary, will be implied. *Penafield* v. *Tower*, 46 N. W. Rep., 413.

In the construction of a will, the intention, whenever it can be legally ascertained, is to govern, and all the rules of construction serve but to attain that end. *Fronty* v. *Fronty*, Bail. Eq., 526.

The plaintiff has come properly into the Court of Equity to obtain its judgment for his guide, in accordance with his "unquestionable right." *Brown* v. *McDonald*, 1 Hill Ch., 300, and to the court of the domicil of the testatrix, the proper one to be resorted to. Am. & Eng. Ency. on Law, 635, *et seq.*, and notes.

It is, therefore, ordered, adjudged, and decreed, that the will of the testatrix, Julia H. Clarke, worked an equitable conversion into personalty at the time of her death, of all her real estate of whatsoever description, and wheresoever situated, and that the plaintiff, as executor, receive, administer, and account for the same as personalty, and that he is by the said will authorized and empowered to sell and convey the same for the purpose of executing said will, and that he have leave to apply for further orders and directions upon the foot of this decree.

The defendant thereafter, by her guardian *ad litem*, filed the following exceptions:

1. Because his honor overruled defendant's objection to the testimony of the witness, Henry P. Clarke, as follows, to wit: "Mrs. Clarke's intention was to convert what she might receive under the will (of P. T. Barnum) into money, and invest it in South Carolina. Her reasons for this were, that in the North and West, she would have to have her property, if there, managed by agents, and would receive a less rate of interest than that which ruled in the South. In the South she would save expenses and commissions of agents, and could manage, or supervise the management personally, besides obtaining higher rates of interest. * * * In the event of any of the beneficiaries under her will dying intestate, Mrs. Clarke believed that the property of such beneficiary would be distributable under the South Carolina laws for the distribution of intestate estates."

2. Because he found as a fact, "That it was the intention of the testatrix, apparent from the words of her will, that such portion of the rest, residue, and remainder of her

estate as might consist of realty should not pass as such into the possession of her husband and children, but should be converted into money, and pass into their possession as money in equal shares, they taking *per capita.*"

3. Because, from the construction of the will, he concluded that there was an absolute necessity to sell the real estate of the deceased to execute the will.

4. Because, from the construction of the will, he held that there was such a blending of the real and personal estate by the testatrix in her will as clearly to show that she intended to create a fund out of both real and personal estate.

5. Because he held, as a conclusion from the construction of the will, that the testatrix had directed a conversion of her entire estate into personalty, and adjudged, "That the will of the testatrix, Julia H. Clarke, worked an equitable conversion into personalty at the time of her death of all her real estate of whatsoever description, and wheresoever situated; and that the plaintiff, as executor, receive, administer and account for the same as personalty, and that he is by the said will authorized and empowered to sell and convey the same for the purpose of executing said will, and that he have leave to apply for further orders and directions upon the foot of this decree."

*Mr. W. H. Lyles*, for appellant.

*Messrs. Verner & Weston*, and *Bachman & Youmans*, contra.

March 18, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE.   On the 29th day of June, 1895, the plaintiff above named commenced his action in the Court of Common Pleas for Richland County against the defendant, wherein he prayed the judgment of the court, for its direction to him in regard to the true construction of the last will and testament, and codicil thereto, of his deceased wife, Mrs. Julia H. Clarke, especially the fifth clause

thereof, and as to his powers and duties as said executor and trustee under said will, and for such other relief as is consistent with his case as made. The answer of the defendant, who was an infant of tender years, by her guardian *ad litem*, duly appointed by the Court of Common Pleas for Richland County, in effect submitted her rights to the protection of the court. The facts of the case are about as follows: Henry P. Clarke, the plaintiff, while domiciled in the State of South Carolina, intermarried with Julia Hurd, in the State of New York, in the year 1886, and the married couple immediately returned to the State of South Carolina, which before the marriage had been adopted as the domicile of the husband, and that State became the domicile of the marriage. In 1891 a daughter, the defendant, Nancy B. Clarke, was born. In 1893 another daughter, Julia Clarke, was born. In 1894 the wife, Julia H. Clarke, died. In May, 1894, the daughter, Julia Clarke, died. For some years after the said marriage the plaintiff and his wife lived on their plantation near Eastover, in Richland County, in this State, and during their residence at this place, and while on a visit to relatives at the North, the wife, Mrs. Julia H. Clarke, made the following will:

"I, Julia H. Clarke, wife of Henry P. Clarke, residing near Eastover, in Richland County, State of South Carolina, being of sound and disposing mind and memory, do make and ordain this my last will and testament, and hereby revoke all other wills by me at any time heretofore made: First. I direct that all my just debts and my funeral expenses shall be fully paid by my executor hereinafter named. Second. I direct that a portion of my estate, sufficient to produce $1,000 annually, shall be safely invested by my executor, and the said $1,000 be paid annually to my father, S. H. Hurd, now in New York city, in quarterly payments, during his natural life. Third. I give and bequeath to Mrs. Laura Sherwood, of Bridgeport, Conn., the sum of $10,000. Fourth. I give and bequeath to Miss Agnes C. Patterson, of said Bridgeport, the sum of

$5,000. Fifth. The rest, residue, and remainder of my estate, real and personal, of whatsoever description and wherever situated, I give, devise, and bequeath as follows: One-half thereof to my husband, Henry P. Clarke, and one-half thereof to my said husband in trust for my daughter, Nancy, until she becomes twenty-five years of age, and then to pay over the whole sum to her; but if she shall marry before that age, with the consent and approval of her father, or, in case of his death, with the consent and approval of her then guardian, then I direct that one-half of her share shall be paid to her upon her marriage, and the other half when she becomes twenty-five. In case I shall leave surviving me one or more children besides my daughter, Nancy, then I direct that the said rest, residue, and remainder of my estate shall be divided equally among my said husband and all of my children, share and share alike, my husband and my children sharing *per capita*, and the shares of my said children to be held in trust as above provided in the case of Nancy as being the only one. And I give, devise, and bequeath the said rest, residue, and remainder as aforesaid to each, and to their heirs and each of them forever. I constitute and appoint my said husband, Henry P. Clarke, to be executor and trustee of this my will, and direct that no bond be required of him under either appointment."

On the 11th day of November, 1893, at her residence near the city of Columbia, in Richland County, and State of South Carolina, the said Mrs. Julia H. Clarke made a codicil to her said last will and testament, wherein she fully ratified and confirmed said last will and testament, except that she revoked the third item or clause thereof, and in lieu of the provision therein contained in favor of Mrs. Laura Sherwood, of Bridgeport, Connecticut, directed her executor to safely invest such portion of her estate as would yield $500 per annum, and pay the said $500 annually, in quarterly payments, to the said Mrs. Laura Sherwood during her natural life. And she also provided that such parts

of her estate as had been invested by her executor to yield the annual payment of $1,000 to her father, S. H. Hurd, and of $500 to Mrs. Laura Sherwood, after the death of each one respectively, should revert to her estate, and be disposed of as under the fifth item or clause of her said last will and testament.

The will and codicil were duly established in the Court of Probate for Richland County, in the State of South Carolina. The plaintiff qualified as the executor. All of the personal estate of the testatrix in the State of South Carolina was $825. Her real estate in the latter State was valued at about $20,000. Her debts amounted to about $30,000. The amount necessary to be invested to raise the annual sums to the said S. H. Hurd and the said Mrs. Laura Sherwood was about $22,000, and to pay the legacy of Miss Agnes C. Patterson was $5,000, making an aggregate of about $57,000. But the testatrix was entitled to the one-sixth part of the estate of her grand-father, the late P. T. Barnum, of Bridgeport, Connecticut, consisting of real and personal estate, in a part of which the widow of the late P. T. Barnum had a life estate. The estate of the late P. T. Barnum was located in three States—Connecticut, New York, and Kansas. Under the statute law of Kansas, whatever lands descended to the infant, Julia Clarke, through her mother, the testatrix, on her death vested in her father, the plaintiff. Under the statutes of New York, such share descended to the father for his life, with remainder to the infant defendant, Nancy B. Clarke. While in Connecticut such estate of the infant, Julia Clarke, would vest absolutely in the defendant, Nancy B. Clarke. While, to the contrary, if, under the provisions of the will of Mrs. Julia H. Clarke, deceased, her whole estate in the States of South Carolina, Connecticut, Kansas, and New York, the rest, residue, and remainder of testatrix's estate, after the payment of debts and legacies, would devolve in equal portions upon the plaintiff, Henry P. Clarke, and the defendant, Nancy B. Clarke—for, of course, the State of South Carolina being

the State of domicile of both Mrs. Julia H. Clarke, the testatrix, as well as that of her infant deceased daughter, Julia Clarke, the personal estate of said infant daughter, Julia Clarke, would be equally divided between her father, the plaintiff, and the defendant, her sister. The plaintiff filling both the office of executor and that of trustee for his infant daughter, the defendant, was naturally strongly moved by the responsibility thus devolved upon him, and a little more than a year after his wife's death exhibited his complaint in the Court of Common Pleas for Richland County, in this State, which was the court of the domicile of all parties, wherein he seeks the aid of that court in the proper discharge of the duties of his two offices of executor and trustee. The hearing came on before Judge D. A. Townsend upon the pleadings and some testimony. The first question submitted to the judge was the competency of certain testimony offered by the plaintiff; the testimony objected to was that of the plaintiff himself, which was: "Mrs. Clarke's intention was to convert what she would receive under the will (the will of her grand-father, P. T. Barnum,) into money and invest it in South Carolina. Her reasons for this were, that in the North and West she would have to have her property, if there, managed by agents, and would receive a less rate of interest than that which ruled in the South. In the South she would save expenses and commissions of agents, and could manage, or supervise the management personally, besides receiving higher rates of interest. In the event of any of the beneficiaries under the will dying intestate, Mrs. Clarke believed that the property of such beneficiary would be distributable under the South Carolina laws for the distribution of intestate estates." The Circuit Judge ruled that this testimony was admissible. Such ruling is excepted to, and forms part of the appeal here taken.

The Circuit Judge made his decree, which will be reported. The defendant appeals, also, from that decree. All

the exceptions will be reported.    Was the Circuit Judge in error in admitting the testimony excepted to?

The object of this testimony was to show that Mrs. Clarke had a certain intention guiding and controlling her in framing the disposition of her property by this will.    We have always understood the rule of law as enforced by the courts of this State regulating the competency of testimony of this character to be, that anything that will show the surroundings of a testator—his family, their names, age or sex, his property, its name, value or character, his use of words, if in any way peculiar, or to explain any ambiguous expressions occurring in the will—is admissible. We have never known that testimony as to an *intention*, separate and apart from that conveyed by the language used in the will, could be held competent.    As was well said by the late Chancellor Job Johnstone, in *Rosborough* v. *Hemphill*, 5 Rich. Eq., 107: "It is conceived that if the effect or purpose of parol evidence is to introduce into a will matter which it does not contain, so as to constitute it a part of the will; to give to the will in itself considered, operative elements, language or provisions which were not in it before, then such evidence is incompetent in a court whose sole function is to construe wills * * *.    Such evidence is very different from that which is offered for the purpose of affording a light by which what is *in* the will, may be read, understood, and applied, which is always proper."    It seems to us, that so much of the testimony offered which relates to the purpose in life of Mrs. Clarke in withdrawing her property from the North and West and locating the same in South Carolina, is incompetent, because there are no words manifesting any such purpose, as written in her will itself; it would be, in effect, *adding to the will* to allow such testimony, and all will admit that this cannot be done in this way.    And we are equally clear, that the last part of this testimony, relating to what the testator thought would occur if any one of the beneficiaries should die intestate before a final distribution of her bounty could be made, for there

occurs no language in the will that points to any·such contingency. This would certainly be adding a new provision to the will. These exceptions must be sustained, but in so doing we do not help the appellant very materially, for the Circuit Judge distinctly states in his decree that he does not base his decision upon this testimony, although he admitted it as competent; and now we approach the true battle ground.

The second, third, fourth, and fifth grounds raise the issue that the provisions of the will *as written*, when properly construed, develop the conclusion that the testatrix intended that her real property, wheresoever situated, and of whatsoever description, should become personalty. That such result obtains from the language used in wills when properly construed, in some cases, must be admitted. The courts of the mother country so hold. The courts of this country—both federal and State—so hold. In what cases will such a conclusion be proper? We answer, in all those cases where the provisions of the will itself manifest that such was the testator's *intention*, if such intention be legal. This intent of the testator when manifested by the language used in the will must be, if legal, carried into execution, for ·equity looks at the intent rather than the form, and one of its maxims is that equity treats that as done which, in good conscience, ought to be done—so declares, in substance, Mr. Pomeroy, in 1 vol., page 413, of his work on Equity Jurisprudence. We do not hold that a direction by the testator that his lands be sold should appear in the will in order that realty shall become personalty, and we do not know that we can more clearly express our views on this phase of the question than by quoting the language of Mr. Justice F. H. Wardlaw, used in announcing the opinion of this court in the case of· *Farmer* v. *Spell*, 11 Rich. Eq., 547 and 548, which was as follows: "Equitable conversion of realty into personalty is effected, in strictness, only where a sale of the land is ordered, and disposition of the proceeds is made;

*but if the. intention to dispose of the subject as personalty
can be ascertained from the face of the will, it may not be
indispensible that a sale should be explicitly directed as a
means of conversion*" (italics ours).  "Chancellor Dargan
says, with sufficient precision, in *Perry* v. *Logan*, 5 Rich.
Eq., 202: 'Wherever it is apparent from the words of the
will that the testator meant that his real estate in that form
should not pass into the possession of the objects of his
testamentary bounty, but should be converted into money,
and as money come to those for whom he designs the bene-
faction, this will be considered in equity as a bequest of
personalty.  Under such circumstances it will be treated in
all respects as if the conversion had been made by the tes-
tator in his lifetime.'  So, too, cases might be within the
principle of conversion as to some incidents, when no alter-
ation of the form of the estate was contemplated."  We
might multiply at great length quotations from other cases
to the same effect, but we have always felt when our own
State decisions recognize fully a principle of law as applied
to our own affairs, that should be sufficient.  Now, let us
turn to the circumstances of this particular case.  It is
established that South Carolina was the domicile of this
testatrix, and that her husband and two children surviving
her, as the objects of her bounty, were also domiciled there;
that her last will fully discloses that each of the three was
to be made equal, one with the other, in the distribution of
her estate.  The testatrix must be presumed to have known
that, under the laws of this State, it was in her power, by
a last will, to divide her whole estate, real and personal, as
she might elect to do; and further, that, under our laws, in
the event of the death of either husband or child, or chil-
dren, the estate of the one so dying intestate would be
shared equally by the two survivors, whether the estate was
realty or personalty.  But it must also be assumed that she
knew the laws regulating intestate estates in the States of
Connecticut, Kansas, and New York, where some of her
estate, real and personal, was located.  Further, it must be

assumed that the testatrix knew of the extent of her estate wherever located, for the will of her grand-father, P. T. Barnum, disclosed the same and her interest therein.   We do not think that the fact of her indebtedness to others and her legacies to others, aggregating $65,000, while her personal estate in South Carolina was only $825, operates to any extent to work the conversion of her realty into personalty, so far as the provisions of her will touching these matters is concerned.

How are we to regard the provisions of the fifth item or clause of the will?  Do these provisions evince an intention of the testatrix to convert her realty into personalty?  When the language at the beginning of this item is considered, it will be seen that she masses, so to speak, her realty and personalty, in the terms "the rest, residue, and remainder of my estate," that is, all that should be left after the payment of her debts and legacies; and this "rest, residue, and / remainder" she gives, devises, and bequeaths equally to her husband, for himself, and to him in trust for her daughter, Nancy, if she should be the only child left by her; but in the event there is another child, then she gives, devises, and bequeaths one-third of such rest, residue, and remainder to her husband, absolutely, for himself, and the other two-thirds to him, in trust, one-third for Nancy and one-third for Julia.   The use by the testatrix of the term "devise" is of some signification, for usually such a term occurs in the testamentary disposition of an estate in realty, as such; and if there were no other words in the text of this will, negativing this idea of the use of the word "devise" being intended to convey her realty, as such, to these beneficiaries, this would end the matter.   However, the use of a word of a technical significance in a will is not allowed, of itself, to fasten down the intent of a testatrix, if other words, phrases, expressions, and sentences or provisions of her will show that her use of this technical word was not intended by her to do more than to show that she meant her realty to pass, commingled with the personalty,

under the terms the rest, residue, and remainder of her estate, to these three beneficiaries. It has been decided in this State, in the two cases, *Moore* v. *Davidson*, 22 S. C., 94, and *Jaudon* v. *Ducker*, 27 S. C., 295, that when a testator used the words "the rest, residue, and remainder of his estate, he considered the estate as a whole, without regard to nice distinction between the realty and personalty of which it was composed. This he had the right to do."

In the case at bar, it will be observed that no positive direction is included in the will for a sale of any of the lands belonging to testatrix for the payment of debts, legacies, or for distribution. The absence of such direction explicitly need occasion no difficulty in this case, for the executor was directed by the terms of the will to pay the debts and legacies, and this he could only do by an application of the property of his testatrix, when sold, to those purposes, and in the execution of this power, after the personal property of his testatrix was had, the lands could be sold; for it must be remembered, it is only "the rest, residue, and remainder of realty and personalty," *after the payments of debts and legacies*, that is given to the beneficiaries provided in the fifth item of the will. Of course, in the absence of explicit authority in the will to the executor to make sales of property to pay debts and legacies, such executor would have to apply to the court for such leave for those purposes. What else is there in this will that will aid us in reaching the intention of the testatrix? It will be seen in the fifth item or clause that the testatrix, when she comes to speak of the duty of the plaintiff as to the one-half of the rest, residue, and remainder of her whole estate, real and personal, he shall receive in trust for his infant daughter, Nancy B. Clarke, declares that "he shall hold such one-half until she, Nancy, becomes twenty-five years of age, and then *to pay* the *whole sum* over to her; but if she shall marry before that age with the consent and approval of her father, or, in case of his death, with the consent and approval of her then guardian, then I direct that *one-half of*

*her share shall be paid* to her upon her marriage, and the *other half* when she becomes twenty-five." Around these words revolve this contention. What was Mrs. Clarke's intention, as herein expressed, as to how she meant any share in her realty should be held by Nancy and Julia through their trustee? Was it to be as realty or personalty? Certainly the trustee was to hold two-thirds of the estate, which he received for his two daughters, for them. The will does not say he shall "turn over" but shall "pay over." What does "pay over" mean, when connected with the words "the whole sum," in the one instance, and one-half of her share on her marriage, and the other one-half of her share on attaining the age of twenty-five years? Surely it must mean that the sum of money from the commingled "rest, residue, and remainder of her whole estate, real and personal," when the same shall be converted into money, shall be paid. If it be so, will not equity construe that Mrs. Clarke, by the language used by her in her last will, has directed that her realty be converted into money, and paid two-thirds thereof to the plaintiff as trustee for his two daughters, and having so directed in her said last will and testament, the Court of Equity, in the promotion of right, will now consider as done what ought to be done? We think this is the true intention of this testatrix.

The exceptions above enumerated to the decree must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.