HAZER FEINBERG

*v.*

ANNA FEINBERG.

[Decided January 4th, 1906.]

1. An application for a rehearing before a vice-chancellor is governed by principles applicable to motions for new trials after verdict in cases of law.

2. A rehearing in an equity case will not be granted to enable the applicant to impeach the credit of witnesses who testified on the original hearing.

3. In order to justify a rehearing in an equity case for newly-discovered evidence, the new matter must be of such a character that, if it had been heard on the trial, it would probably have altered the result.

On petition for divorce. On petition for rehearing.

*Mr. John W. Wescott,* for the defendant.

*Mr. Andrew J. King,* for the petitioner.

GREY, V. C.

This cause was heard on January 9th and 18th, 1905, the issue being the charge of the petitioner, Hazer Feinberg, that the defendant, his wife, Anna Feinberg, had committed adultery with one John Myers, for which reason the petitioner prayed a divorce.

On January 23d, 1905, a final decree was made, granting the prayer of the petitioner for divorce, because of the adultery of the defendant with Myers, as charged in the petition.

On July 24th, 1905, the defendant, Anna Feinberg, filed her petition in this court, alleging that the vice-chancellor, in ordering the decree for divorce, rested his conclusions upon the evidence of one Bertha Schindle, and that since the hearing the

defendant has discovered "new and material evidence tending to discredit the evidence of the said Bertha Schindle," and praying

"that the decree of divorce heretofore ordered against her may be opened and that she may be permitted to offer before this court the witnesses and affidavits attached to her petition."

The petition for a rehearing is supported by affidavits thereto annexed, which, it is contended, exhibit sufficient grounds to open the final decree and try the cause over again. The petitioner, Anna Feinberg, insists that they show newly-discovered evidence, which if presented to the court is of sufficient weight and credibility to lead to a different conclusion.

The affidavits address themselves to several different phases of the case, in substance, as follows: The first two affidavits recite parol statements said to have been casually made by the husband, Hazer Feinberg; one witness swears that in July, 1904, Feinberg said

"he was going to try to get rid of his wife, and that he had a girl who would say anything that he wanted her to say; that he didn't care what it would cost him."

The next witness declares that Feinberg, one day last summer (1904), told her that

"he did not want his wife to leave him, that she went away because of the influence of her mother, who persuaded her to leave him; that her mother took her away and made all the trouble between them."

It will be noticed that the first affidavit imputes to Mr. Feinberg a purpose to be rid of his wife, the other a desire to keep her. Nothing identifies the girl mentioned by Feinberg as one "who would say anything he wanted her to say" as the witness Bertha Schindle. These alleged statements, even if correctly understood and repeated in the affidavits, have neither that certainty or force as evidence which should affect the judgment of a court to open a decree for rehearing.

The next affidavits are given by John Myers, the paramour

of the defendant; by Mrs. Annie Myers, his wife, and friends who visited at their home. These persons attempt to prove an *alibi* by showing that on Christmas eve, 1903 (December 24th), the paramour, Myers, was not at the Feinberg house, as was proven on the hearing of the cause. Myers says, in his affidavit, that he had understood that the time of the alleged adultery was fixed as on Christmas night of 1903 (December 25th), and that the first he knew that it was claimed to have been on Christmas eve (December 24th) was at the trial. Both Myers and his wife then testify that on December 24th, 1903 (Christmas eve), he was elsewhere.

The petition for divorce expressly names December 24th, 1903, as one of the days on which the adultery was committed. At the hearing of the cause the accusatory testimony of the witness Bertha Schindle was given on January 9th, 1905, and was followed by an adjournment until January 18th, 1905, on which day both Mr. and Mrs. Myers were called to the stand as witnesses for the defendant. Myers was shown by undisputed testimony to have discussed his relations with Mrs. Feinberg long before the hearing with the utmost freedom of speech. He knew before the trial that he was accused of adultery with Mrs. Feinberg. He went on the stand nearly ten days after the testimony was given which accused him of adultery on Christmas eve.

The incriminating admissions of Mr. Myers, proven against him at the hearing despite his denials, while not forceful to show the guilt of the defendant, Mrs. Feinberg, go far to impeach Myers' own veracity as a witness. He assiduously attended at the hearings. I cannot believe that he took so little interest in the cause that he mistook the date when he was charged to have committed the adultery.

Other affidavits annexed to the petition (Mrs. Vaughn's and Mrs. Naylor's) state that Mr. Feinberg several times visited Bertha Schindle at houses where the latter was a servant between December, 1903, and March, 1904, and this it is claimed contradicts Bertha's testimony at the hearing, when she was questioned, "Have you seen Mr. Feinberg since the suit commenced?" and she answered, "No, sir," and shows a conspiracy between Feinberg and Miss Schindle to present a false case and

to conceal it.  I am unable to give such proof so great importance.

The last affidavit is that of David Wudlausky, who signs with a Hebrew signature a manuscript written in English.  This affidavit recites a conversation alleged to have taken place in September, 1904, between Wudlausky and Feinberg.  The affidavit states that Feinberg said

"he had a girl in Hammonton who would tell of his wife's conduct with the policeman (meaning John Myers) ; that he had this girl fixed, and knew how she would testify; that Feinberg then and there told deponent that you could do anything with money, and that he Feinberg was sure to get his divorce."

It is claimed that this must be held to be an admission that the petitioner corruptly suborned the witness Bertha Schindle to testify falsely.  Although it is an *ex parte* affidavit, presumably expressed most favorably to the purpose for which it is presented —the securing of a rehearing—the words used do not justify the contention.  Bertha Schindle is not named nor in any way identified by any other incident than the fact that she testified to the wife's adultery.  It does not follow that the unnamed girl would testify falsely because Feinberg knew how she would testify.  That he had her "fixed" does not necessarily mean that she was corruptly fixed to perjure herself, nor does the allusion of the power of money imply its wrongful use to suborn witnesses.

A verbal admission alleged to have been made by a party to a suit, says Mr. Greenleaf, should be received with great caution,

"consisting as it does in the mere repetition of oral statements, it is subject to much imperfection and mistake.  *  *  *  It frequently happens that the witness, by unintentionally altering a few of the expressions used, gives an effect to the statement completely at variance with what the party actually did say."  *1 Greenl. Evid.* § *200.*

The oral admissions ascribed to the husband in the affidavits annexed to the petition for rehearing are open to this criticism. The husband's alleged admissions which they present do not themselves show that he had contrived a plan to set up a false

case. In order to give this effect to them, the existence of a criminal purpose on his part must be presumed.

It cannot, I think, be maintained that the testimony of the witness Bertha Schindle was a surprise to the defendant or her paramour, Myers; or that her testimony as to the date of the offence misled them, for the time when Bertha testified she saw the incriminating act accorded with that long before alleged in the petition for divorce. Nor can they say that they had no opportunity to refute Bertha's evidence, for there was a period of nine days after they heard it before they were themselves called as witnesses. They directly contradicted, in every essential particular, the evidence which she gave, but their testimony, in view of all the proofs, was deemed unworthy of belief, and hers to have accorded with the trend of that given by the other witnesses. It is not newly-discovered evidence introducing a new point which has come to light since the trial, but only new witnesses who attempt to discredit Miss Schindle.

The position disclosed on the hearing of the cause directly prompted the impeachment of Miss Schindle's testimony by the defendant, if that were possible. The issue of her veracity was directly before the court. A rehearing ought not to be granted to enable the defendant to impeach her credit. *2 Dan. Ch. Pr.* *1120 note b.* The rule on application for a rehearing before a vice-chancellor is governed by the principles which are recognized in the law courts in cases of motions for new trials after the verdict of a jury. *Warner* v. *Warner, 31 N. J. Eq. (4 Stew.)* *549; Burrows* v. *Wene, 26 Atl. Rep. 890.* Those courts declare it to be settled that "a new trial will not be granted upon the new discovery of witnesses who will swear against the credit of those sworn upon the trial." *Price* v. *Ward, 7 N. J. Law (2 Halst.) 127; Den* v. *Geiger, 9 N. J. Law (4 Halst.) 240.*

The court of errors and appeals has declared that, in order to justify a rehearing because of newly-discovered evidence, it must be shown that the new matter offered must be of such a character that if it had been heard on the trial it would probably have altered the judgment. *Watkinson* v. *Watkinson, 68 N. J. Eq. 632; Richardson* v. *Hatch, 68 N. J. Eq. 788.*

The affidavits supporting the petition for a rehearing setting forth the alleged admissions of the husband are in no way forceful to show even a probable subornation of the witness Bertha Schindle. Those of Myers and his wife attempting to prove an *alibi* for Myers are in no proper sense newly-discovered evidence, and so far as that of Myers is concerned cannot be accepted, because the evidence at the hearing entirely satisfied me that his denials were unworthy of belief.

In my view, the defendant has had her day and full opportunity to present her defence. The supposed new evidence set forth in the affidavits annexed to her petition for a rehearing, had it been offered at the trial of the cause, would not have changed the result.

The petition for a rehearing should be dismissed.