### LAND TITLE & TRUST CO v. S. C. TAX COMMISSION

#### (126 S. E., 189)

1. TAXATION—ONE STATE CANNOT IMPOSE DIRECT TAX ON REAL ESTATE IN ANOTHER STATE.—One State has no power directly to tax real estate situated in another State.

2. CONVERSION—WILL HELD TO EFFECT CONVERSION OF RESIDUARY REAL ESTATE INTO MONEY FOR DISTRIBUTION UNDER WILL AS PERSONALTY.

—Will directing sale of residue of real and personal estate of testatrix, and payment of proceeds to designated legatees, *held* to effect a conversion of the residuary real estate into money for distribution as personalty.

3. TAXATION—VALUE OF REAL ESTATE IN OTHER STATE CONVERTED INTO PERSONALTY BY WILL INCLUDED IN ASSESSMENT OF INHERITANCE TAX. —Where resident's will directs a sale of real estate in another State so as to work a conversion of such real estate into personalty, the value of such real estate may be included in measuring the amount of the inheritance tax, since for purposes of taxation the situs of personal property is owner's domicile.

4. TAXATION—"INHERITANCE TAX" IS TAX ON TRANSFER AND NOT ON PROPERTY ITSELF.—"Inheritance tax" is not a tax on the property itself but a tax upon the transfer, transaction, or right of succession, and is merely measured in amount by the value of the property transferred.

5. TAXATION—SITUS OF PERSONAL PROPERTY IS WHERE OWNER RESIDES AND HAS DOMICILE.—The situs of personal property for purposes of taxation is where owner resides and has his domicile.

Proceedings by the South Carolina Tax Commission, Inheritance Tax Division, for assessment of inheritance tax on transfer of estate of Mary Jane Ross, deceased.    From assessment made by the Commission, the Land Title & Trust Company and others, as executors, and the Presbyterian Hospital in Philadelphia, appeal.    Affirmed.

The statement of facts referred to in the opinion is as follows:

Mary Jane Ross, late citizen and resident of the City of Charleston, County of Charleston, State of South Carolina, departed this life on the 16th day of August, 1922, leaving of full force and effect a last will and testament and sundry codicils thereto, which have been duly admitted to probate in the Probate Court for the County of Charleston, State of South Carolina.    She appointed the Land Title & Trust Company and Charles Sanderson, of Philadelphia, and Alfred Huger, of Charleston, her executors, and these executors duly qualified and assumed the administration of the estate.    Within the time required by law, the executors duly filed an inventory of the estate in the office of the

Probate Court for Charleston County, S. C., and thereafter the said estate was appraised by appraisers duly appointed by said Probate Court.

The testatrix disposed of a considerable portion of her estate by specific legacies and devises, among them a legacy to the Presbyterian Hospital of Philadelphia, Pa., of $20,000.00 for the endowment of four beds in memory of decedent's mother, Ann Ross, her aunt, Mary Henry, her sister, Elizabeth Henry Bennett, and herself. The will contains the following provisions as to the residue:

"All the rest, residue and remainder of my estate real and personal whatsoever, in the City of Philadelphia or commonwealth of Pennsylvania, or elsewhere, wheresoever situate, which I now own or which may belong to me at the time of my death I give, devise and bequeath to William Brooke Rawle, Esq., of Philadelphia aforesaid, and to Edward McCrady, Jr., Esq., of Charleston aforesaid, and the survivor of them and their successor or successors in the trust and their and every of their heirs, executors, administrators and assigns in trust to sell and convert the same into money either by public or private sale for such prices and upon such terms and at such times as to them the said trustees, or the trustee or trustees for the time being, in their or his sole discretion may seem sufficient and proper and to execute good and sufficient conveyances and assurances therefor without any liability on the part of any purchaser to see to the proper application of the purchase moneys or proceeds of sales as aforesaid, and after deducting their or his proper costs, charges, commissions and expenses to divide and pay over the proceeds of such sale in two equal half parts thereof as follows, one half part thereof to the Presbyterian Hospital in Philadelphia and its successors, to be kept separately invested as an endowment fund, in good income yielding securities or investments without impairment or diminution, to be known and des-

ignated as the Ross Henry Memorial Fund, the income only to be used and applied to the support and maintenance of the said hospital and to the carrying out of the purposes for which it has been established; and the other half part thereof to the Medical Society or Association, trustee of the Roper Hospital of Charleston, as aforesaid, on the like and same uses, trusts, and purposes, the said fund to be known and designated as the Ross Henry Memorial Fund, provided, however, that the said Medical Society or Association, trustee as aforesaid, shall be able and competent under the laws of the State of South Carolina to accept, receive, and hold the same or shall obtain legal authority by charter or otherwise to do so as aforesaid. And until such sale and conversion into money as aforesaid, and so far as one-half part of my residuary estate is concerned, until the said Medical Society or Association, trustee of the Roper Hospital as aforesaid, shall be or become able and competent to accept, receive, and hold the said one-half part thereof hereby given and bequeathed in aid of the said charity, I authorize and direct the said trustees or trustee to hold the said residuary real and personal estate, or the said half part thereof as the case may be, in trust to let and demise the said real estate, and keep the said personal estate invested in good income yielding securities and investments in the said commonwealth of Pennsylvania or State of South Carolina from which ever of them the original fund may be derived, and after paying all proper taxes, charges, costs, commissions and expenses to pay the net income thereof, one-half to the Presbyterian Hospital in Philadelphia as aforesaid and its successors, and the other half to the Medical Society or Association, trustee of the Roper Hospital of Charleston aforesaid, and its or their successors, to be used and applied to the support and maintenance of the said respective institutions and to carrying out the purposes for which they have been established respectively."

A codicil to the will, dated November 20th, 1915, provides as follows:

"Whereas in my will, I have directed that all my residuary estate real and personal shall be sold and converted into money, the proceeds of sale to be paid to and be invested by the beneficiaries in endowment funds as directed, now it is my will that in case my executors and trustees or the successors or survivor of them for the time being, and either or both beneficiaries shall before actual conversion, deem it of advantage for any reason to make partial distribution in securities or real estate at a valuation and appraisement to be jointly approved by my said executors or trustees and by both said beneficiaries, such partial distribution may be made in securities or real estate to either or both said beneficiaries. This provision, however, is not intended to qualify the general direction in my will to convert as to any estate real or personal prior to any such agreement, or as to any property not included in such agreement."

On the 1st day of March, 1923, the Legislature of South Carolina amended the charter of the Medical Society of South Carolina so as to enable it to take under the will of Mary Jane Ross, and to allow it to possess unlimited amount of property and income. Acts of 1923, 481. No distribution of the property referred to in the will and codicil above set forth has been made in kind by the executors. William Brooke Rawle, and Edward McCrady, Jr., having both departed this life, the appellants, the Land Title & Trust Company and Charles Sanderson, of Philadelphia, and Alfred Huger, of Charleston, were appointed in their room and stead.

| | |
|---|---:|
| The entire gross estate was appraised by the appraisers at | $ 1,887,555.61 |
| The tax commission deducted debts and expenses amounting to | 99,340.41 |
| Leaving a net estate of | $ 1,788,215.20 |

.They computed the specific devises and be-
    quests as amounting to ............ 1,032,330.99

Leaving a residue of ..................$   755,884.21
The real estate located in Philadelphia was
    duly appraised at the sum of ........$   785,900.00

The commission valued the share of the Presbyterian
Hospital in Philadelphia, including the legacy of $20,000
for the endowment of beds and one-half of the residuary
estate, to wit, $377,942.10, at $397,942.10, and deducting
therefrom an exemption of $200, fixed the taxable legacy
of the Presbyterian Hospital in Philadelphia at $397,742.10,
upon which they assessed an inheritance tax of $43,883.89.

The issue is: Was the South Carolina tax commission
correct in assessing the tax against the Philadelphia Hospi-
tal under the provisions of the will and codicil above set
forth?

*Mr. W. C. Miller,* for appellant, cites: *The State has no
power to tax transfer of real property situate in another
state:* 26 R. C. L., 211 and cases cited, 35 Ann. Cas., 159.
*Equitable doctrine of conversion:* 1 Pom. Eq. Juris. (3rd
Ed.), 605; Pom., 2317; 4 Hare 315; 62 N. C., 141; 132
N. C., 476; 71 N. E., 350; 18 L. R. A., 709; 3 N. Y. App.
Div., 208; 149 N. Y., 618; 25 N. Y. App. Div., 219; 142
N. Y., 219; 197 Mass., 248; Penn. Cases 129 Pa., 338;
154 Pa., 231; 212 Pa., 315; 181 Pa., 344; 221 Pa., 112;
182 Pa., 157; 161 Pa., 183; 111 Pa., 328; 40 Pa., 548; 215
Pa., 367; 153 Pa., 508; 20 Pa., 379; 178 U. S., 186; 122
La., 836; 35 A. & E. Ann. Cas., 170. *In order to work a
conversion there must be a positive direction to sell:* 72
Pa., 414; 181 Pa., 339; 215 Pa., 367; Vol. 3, Pom. Eq.
Juris. (3rd Ed.), 2308. *Presumption against conversion:*
200 Pa., 419; 220 Pa., 82; 42 Pa., 414. *Testator's inten-
tion:* 240 Pa., 38. *Inheritance tax:* 37 Cyc., 1556.
*Double taxation:* 26 R. C. L., 217.

*Messrs. Samuel M. Wolfe, Atty. Gen.,* and *J. Fraser Lyon,* for respondent, cite: *Equitable conversion:* 9 Cyc., 830; 3 Pom. Eq. Juris (3rd Ed.), Sec., 1159, 1173; 9 Cyc., 832; 46 S. C., 230; 111 Pa. St., 321; 153 Pa. St., 508; 188 Iowa, 833.

January 13, 1925.

The opinion of the Court was delivered by Mr. Justice Marion.

The question raised is whether, for the purpose of assessing the South Carolina inheritance tax, the value of real estate situated in Pennsylvania could properly be included as a portion of a legacy bequeathed by the testatrix, a resident of South Carolina, to the Presbyterian Hospital of Philadelphia, under the provisions of a will duly admitted to probate in this State directing that the real estate *in* question should be sold and converted into money and the proceeds of sale paid in fixed proportions to said hospital and another beneficiary named in the will. Let the statement of facts set out in the record be incorporated in the report of the case.

Appellants' exceptions advance three propositions: (1) That "the South Carolina tax commission were without power and authority to tax the transfer of any part of the real estate in Philadelphia"; (2) that the "commission erred in including any portion of the real estate in Philadelphia as a part of the residuary share of the Presbyterian Hospital subject to the inheritance tax"; and (3) that the "commission should have excluded the value of the whole of the real estate in Philadelphia from the total value of the entire estate in determining the taxable value of the residuary estate, and the share of the Presbyterian Hospital subject to such tax should have been fixed after making such deduction."

The validity of the first of the foregoing propositions, in so far as it declares and asserts the elementary principle that one state has no power directly to tax real estate situated in another state, is not open to question.   26 R. C. L., 211, § 180; note Ann. Cas., 1915A, 169.   But it does not follow, respondents say, that appellants' remaining contentions are valid, and that the tax here under review was improperly levied.   The position of the tax commission is that, under the terms of this will, by virtue of the doctrine of equitable conversion, the real estate in Pennsylvania was converted into personalty, and as such personalty is subject to the inheritance tax in South Carolina, the State of the testatrix's domicile.   Broadly, the case turns upon whether that position may be soundly maintained.

In the construction of wills the doctrine of equitable conversion has been fully accepted and repeatedly applied in this jurisdiction.   In *Perry v. Logan,* 5 Rich. Eq., 202, this Court (Dargan, Ch.) said:

"Wherever it is apparent from the words of the will, that the testator meant, that his real estate" in that form "should not pass into the possession of the objects of his testamentary bounty, but  *  *  *  should be converted into money, and as money  *  *  *  come to those for whom he designs the benefaction," this will be considered in equity as a bequest of personalty.   "Under such circumstances, it will be treated in all respects, as if the conversion had been made by the testator in his lifetime."

In *Farmer v. Spell,* 11 Rich. Eq., 547; 548 it is said (Wardlaw, J.):

"Equitable conversion of realty into personalty is effected in strictness only where a sale of the land is ordered, and disposition of the proceeds is made; but if the intention to dispose of the subject as personalty can be ascertained from the face of the will, it may not be indispensable that a sale should be explicitly directed as a means of conversion."

In the case of *Clarke v. Clarke,* 46 S. C., 230; 24 S. E., 202; 57 Am. St. Rep., 675, the testatrix, Mrs. Clarke, a resident of South Carolina, by her will bequeathed and devised "the rest, residue, and remainder" of her estate, real and personal, one-half to one beneficiary and one-half to other beneficiaries. The testatrix owned considerable real estate situated in Connecticut and other states. This Court held (syllabus) that "when the testator uses such words as convey the idea that the whole estate, both real and personal, shall be commingled and distributed as personalty, and in such connection uses such words as 'invest' and 'pay over,' the will will be construed to authorize the executor to convert the realty into personalty, although no direct authority to sell and convey real estate is given," and accordingly construed the will of Mrs. Clarke to work an equitable conversion of realty, wherever situated, into personalty.

Applying the doctrine of equitable conversion as announced in the foregoing cases to the construction of the will here involved, we have no doubt that under the terms of said will the real estate of the testatrix situated in the State of Pennsylvania or elsewhere became personalty; that is, that the will had the effect—certainly in so far as it operates upon the rights of any party entitled to invoke the doctrine of equitable conversion—of converting the realty of the testatrix, wherever situated, into personalty. The will expressly provides that "all the rest, residue and remainder" of the estate of the testatrix, real and personal, "in the City of Philadelphia or commonwealth of Pennsylvania, or elsewhere wheresoever situate," should be sold and the proceeds, after payment of all costs, charges, etc., divided and paid over in two equal half parts thereof; "one half part thereof to the Presbyterian Hospital in Philadelphia," etc., and "the other half part thereof" to the "trustee of the Roper Hospital of Charleston," etc. The clear intent of the testatrix that for the purpose of transferring to and vesting in the beneficiaries named the

property described in the will, all her residuary real estate should be converted into money and distributed as personalty is, as we apprehend, in no wise changed or obscured by the provisions of the codicil which authorize the executors and trustees to make a partial distribution, before actual conversion, "in securities or real estate at a valuation and appraisement to be jointly approved" by the executors or trustees and "by both said beneficiaries." If under that authority these beneficiaries should take any part of the shares accruing to them in real estate it would seem clear that they take as purchasers and not as devisees. Any land so distributed would be merely a substitute for money, and would have to be taken at a price. *Miller v. Commonwealth,* 111 Pa., 321; 2 A., 492; Laird's Appeal, 85 Pa., 339. And see *Clarke v. Clarke, supra.* That the permission and authority thus conferred were not intended to alter the effect of the previous direction to sell, which clearly worked a conversion, is expressly confirmed by the additional language of the codicil to the effect that the provision, as to distributing a part of the property in securities or real estate, "is not intended to qualify the general direction in my will to convert as to any estate real or personal prior to any such agreement," etc. It being, therefore, the clearly disclosed intent of Mary Jane Ross that for the purpose of distribution under her will all the real estate here involved should be converted into money and should pass as personalty to the beneficiaries designated, under the well-settled rule in this State at the instant of the testatrix's death, this real estate, which she had directed to be converted into money, became by operation of law so converted, and passed under the will as personalty.

But whether under a will of this tenor there is such a conversion of real property into personalty as to justify the application of the rule that the situs of personal property follows the residence of the testator for the purposes of an inheritance or success on tax, is a question upon which the

authorities are not uniform.   Following the view announced by Vice Chancellor Wigram in *Custance v. Bradshaw,* 4 Hare (Eng.), 315 (a decision which would seem to have been modified by more recent English cases; see *Forbes v. Stevens,* L. R., 10 Eq., 178, and *Stokes v. Ducroz,* 62 L. T. N. S., 176; 38 W. R., 535), it appears to have been held in New York, North Carolina, Illinois, and Massachusetts that the doctrine of equitable conversion is not applicable to subject the transmission or devolution of real estate outside the state of the testator's domicile to an inheritance tax or succession duty in the state of the testator's residence. Swift's Estate, 137 N. Y., 77; 32 N. E., 1096; 18 L. R. A., 709.   *State v. Brevard,* 62 N. C., 141.   *Connell v. Crosby,* 210 Ill., 380; 71 N. E., 350.   *McCurdy v. McCurdy,* 197 Mass., 248; 83 N. E., 881; 16 L. R. A. (N. S.), 329; 14 Ann. Cas., 859.   On the other hand, it is the well-settled rule in Pennsylvania, where the real estate with which we are here concerned is situated, that the doctrine of equitable conversion is applicable to determine the situs and status of a testator's property for the purposes of inheritance taxation.   *Miller v. Com.,* 111 Pa., 321; 2 A., 492; Williamson's Estate, 153 Pa., 508; 26 A., 246; In re Dalrymple, 215 Pa., 367; 64 A., 554; In re Marr's Estate, 240 Pa., 38; 87 A., 621, Ann. Cas., 1915A, 167.   That rule has been followed in Iowa.   Sandford's Estate, 188 Iowa, 833; 175 N. W., 506.   In the case at bar the tax commission followed and applied the rule adopted by the Pennsylvania Courts, and the precise question presented is whether in so doing they committed error of law.

The decisions which deny the right to impose an inheritance tax, in the state of the testator's domicile under this doctrine of equitable conversion, proceed upon the theory that conversion is an equitable fiction which should not be carried beyond the extent necessary to accomplish the equitable result aimed at, and should not be held to "alter the nature of property for the purpose of subjecting

it to fiscal claims to which at law it was not liable in its existing state" (Wigram, V. C., in *Custance v. Bradshaw, supra*), and that "it was never intended by the law to tax a theory having no real substance behind it" (Matter of Curtis, 142 N. Y., 219; 36 N. E., 887). The cases in which the contrary view is taken rest upon the basis that where a testator directs a sale of the land and the distribution of the proceeds, the doctrine of conversion applies for the reasons that what the testator intended was an actual conversion by sale, either to third parties or to beneficiaries under the will, and the blending of the proceeds with his other presonalty for purposes of administration under the will; and that the actual situs of the land is immaterial in, that what passes under the will is not the land, but the proceeds, which is personalty, and liable to the tax. *In re* Handley, 181 Pa., 339; 37 A., 587. The action of the Courts in dating such conversion from the instant of death is but the application of the general rule that what is to be done must be treated in equity as done already.

In so far as the question presented involves the right 3, 4 of the State of South Carolina to invoke the doctrine of equitable conversion of a resident testator's real property situated within the State, for the purposes of levying the tax imposed by our local inheritance tax laws, we can perceive no sound reason why the doctrine of conversion should not be applied. The inheritance tax is not a tax upon the property itself but upon the transfer, transaction, or right of succession, and is merely measured in amount by the value of the property transferred. *Fuller v. Tax Commission* (S. C.), 121 S. E., 478, 482. *Magoun v. Bank,* 170 U. S., 298; 18 S. Ct., 594; 42 L. Ed., 1037. *U. S. v. Perkins,* 163 U. S., 625; 16 S. Ct., 1073; 41 L. Ed., 287. *Maxwell v. Bugbee,* 250 U. S., 525; 40 S. Ct., 2; 63 L. Ed., 1124. *Rhode Island Hospital Trust Co. v. Doughton,* 187 N. C., 263; 121 S. E., 741, 744. The will made by a resident of this State which provides for the

transfer of real property in the State, in accordance with directions which work a conversion of such realty into personalty under the settled rule of equitable conversion, must be regarded as having been made in contemplation both of that rule and of the local inheritance tax laws.   In enacting the inheritance tax law the lawmakers are presumed to have had in view the rule of equitable conversion as applied to wills in this jurisdiction, and, in the absence of express provision to the contrary, to have intended that inheritance taxes should be assessed upon the transfer of the property as thus converted.   If, therefore, the trustees and beneficiaries under the will of a resident testator are entitled to invoke the doctrine of equitable conversion for any purpose, they would, it seems clear, be entitled to invoke that doctrine for the purposes of paying the inheritance taxes imposed by the State.   If such right is available to the beneficiaries or trustees of the will, we see no sound reason why the same right may not also be invoked by the State whose laws confer the power to transfer property by will and sanction the rule of equitable conversion in giving effect to the terms of such will.   We conclude, therefore, that the rule of equitable conversion is applicable for the purpose of imposing the inheritance tax in so far, certainly, as real estate situated within the State may be involved or affected.

If so, we think it may soundly be applied in the case at bar to the real estate of the resident testatrix situated in the State of Pennsylvania.   The will of the testatrix, disposing of an estate of the net value of $1,788,215.20, was duly admitted to probate in the Courts of this State, and the executors duly qualified and entered upon the discharge of their trust under the laws of this State.   The value of the Pennsylvania realty was less than half of the value of the whole estate.   If the rule of equitable conversion is applicable in the jurisdiction of the universal succession, the domiciliary State, the logical effect of

the application of the rule is unquestionably to convert the
real estate of the testatrix wherever situated into personalty
for the purposes of this universal succession.   That "the
personal property of a decedent, whatever its character, and
wherever located, is subject to an inheritance tax in the State
of which the owner was a resident at the time of his death,"
is very generally conceded (*Bullen v. Wisconsin,* 240 U. S.,
625; 36 S. Ct., 473; 60 L. Ed., 830) under the well-settled
principle that for purposes of taxation the situs of personal
property is where the owner resides and has his domicile.
*Rhode Island Hospital Trust Co. v. Doughton, supra;
Laman v. Scott,* 3 Strob., 563.   That principle is based upon
the maxim, *mobilia sequuntur personam,* which, in its ap-
plication to tangible personal property physically located in
a state other than that of the owner's domicile, has been
aptly denominated a fiction of the law.   But by virtue of
that fiction the value of the personal property of a resident
decedent physically situated in another state is properly taken
into account in measuring the excise tax on the transfer,
succession or devolution in the State of the decedent's
domicile.   That universally accorded right of the state of
the domicile is in no wise impaired by the right of the state
where the personal property may be physically located to
subject the property to similar taxation.   That is, it is the
right of the domiciliary state to tax the universal succession,
while according to the fact of power, the singular succession
may be taxed in another.   *Knowlton v. Moore,* 178 U. S.,
53; 20 S. Ct., 747; 44 L. Ed., 969.   *Coe v. Errol,* 116 U.
S., 517; 6 S. Ct., 475; 29 L. Ed., 715.   *Hartman's Case,*
70 N. J. Eq., 667; 62 A., 562.   *Blackstone v. Miller,* 188
U. S., 189; 23 S. Ct., 277; 47 L. Ed., 439.   And see *Fuller
v. S. C. Tax Com.* (S. C.), 121 S. E., 479.   Where, there-
fore, by the law of the domiciliary state, taxing the uni-
versal succession, the testator's real estate situated in other
states is by the terms of the will converted into personalty,
from the viewpoint of practical results there would seem to

be no more substantial or valid reason for excluding the value of the converted real estate in measuring the excise tax upon the universal succession than for excluding the value of the tangible personal property of the testator physically situated in another state.

The validity of any such reason, it would seem clear, must rest in the last analysis upon the consideration that, while the succession to the personalty wherever situated under the principle of *mobilia sequuntur personam* is governed by the law of the decedent's domicile, title to real property can be transferred only in accordance with the *lex loci rei sitæ.* Thus it was held in *Clarke v. Clarke,* 178 U. S., 186; 20 S. Ct., 873; 44 L. Ed., 1028, that a judgment of the Courts of South Carolina, (*Clarke v. Clarke,* 46 S. C., 230; 24 S. E., 202; 57 Am. St. Rep., 675), construing the will of a resident testatrix, which had been probabted in the State, to work an equitable conversion of real property into personalty, was not binding, under the full faith and credit clause of the Federal Constitution, upon the Courts of Connecticut, where certain of the decedent's land was situated, the Court saying:

"It is a doctrine firmly established that the law of a State in which land is situated controls and governs its transmission by will or its passage in case of intestacy. * * * 'It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances.' "

Conceding, therefore, for the purposes of the present discussion, that it is to the law of Pennsylvania that we must look for the rules which govern the "effect and construction" of the will of this testatrix, in so far as the realty situated in Pennsylvania is concerned, if under the law of that jurisdiction the will may soundly be construed to work an equitable conversion of the real estate there situated into personalty, the position that such converted realty should not be

taken into account in this, the domiciliary state, for the purpose of taxing the universal succession would seem, in any view, to be no longer tenable. If, as has been suggested by our own Court (*Lamar v. Scott, supra*), the principle that personal estate "is regulated as to its mode of transmission from one person to another by the law of the country where the owner had his domicile at the time," derives its force, not from "the law of other countries, but because it is the municipal law of the country in which the chattels are situated," the proposition that the Pennsylvania realty passing under this will becomes personalty for the purposes of inheritance taxation in this State derives a like force from the law of the State where the land is situated. Our examination of the Pennsylvania decisions leaves no room for doubt that under the law of that jurisdiction the effect of the will here under consideration was to work an equitable conversion of the real estate situated in that State, into personalty. See Pennsylvania cases, *supra,* and note Ann. Cas., 1915A, 172-174. That the doctrine of equitable conversion is applicable for the purpose of inheritance taxation has, apparently, been followed by the Courts of Pennsylvania to its logical conclusion. Thus the right of the State to tax realty there situated as realty, when under the will of a nonresident testator the land had been equitably converted into personalty, was denied in the case of Coleman's Estate, 159 Pa., 231; 28 A., 137. In that State of the law of the place where this real estate is situated, we perceive no valid ground for denying the right of this, the domiciliary state, to take into account the value of the Pennsylvania real estate as personalty, in measuring the amount of the inheritance tax here.

The record does not disclose that the assessment of the South Carolina inheritance tax under the foregoing view will entail any such double taxation as would justify the application of the principle that where there is substantial doubt as to the intent of the Legislature in enacting a tax

law, the doubt is to be resolved against a construction, which would result in double taxation on the same property rights. It is stated in the argument of appellants' counsel that since the decision of the Pennsylvania cases herein referred to, that state has enacted an inheritance law very similar to that in force in this State, and that under that law the Pennsylvania realty is subject to inheritance taxation in that State. But it does not appear that under that statute the real estate in question would not be treated as personalty under the well-settled law of that jurisdiction. And, as hereinabove pointed out, the right to impose such a tax in the State of the domicile of the testatrix, which has acquired jurisdiction of the universal succession, is not affected by the statute of a foreign State which subjects to similar taxation the personal estate of a decedent in that State. *Hartman's Case,* 70 N. J. Eq., 667; 62 A., 560. *Blackstone v. Miller, supra.*

It is accordingly adjudged that the ruling appealed from be affirmed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.
MR. CHIEF JUSTICE GARY did not participate.